No. 31,754

E. Florian Lindberg, *Appellant*, v. The Pence View Farming Company, The Commercial Securities Company, and Iris Pendleton, *Appellees*.

(33 P. 2d 1102.)

Opinion filed July 7, 1934.

*B. F. Alford* and *Lloyd F. Cooper*, both of Wichita, for the appellant.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson, Frederick W. Aley* and *Carl G. Tebbe,* all of Wichita, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: This is an action to have a deed with an option contract to repurchase construed as a mortgage. Copies of the deed and the option contract were attached to the petition as exhibits. The trial court heard oral evidence and made findings of fact and conclusions of law in favor of the defendant, and plaintiff appeals

to this court assigning error in the findings, conclusions and rulings of the trial court.

The deed was a general warranty deed in the usual form, dated December 31, 1930, between E. Florian Lindberg and Dorothy F. Lindberg (his wife), grantors, to the Pence View Farming Company, grantee. Consideration: "One dollar and other valuable consideration." Property conveyed: "Lots 63 and 65 Lawrence avenue, in the original town, now city, of Wichita." Conveyed free and clear of encumbrances, "except one mortgage to Wheeler Kelly Hagny Company in the amount of $26,000."

The option contract was as follows:

"This contract, entered into this 31st day of December, 1930, between the Pence View Farming Company, of Wichita, Kansas, parties of the first part, and E. Florian Lindberg and Dorothy F. Lindberg, husband and wife, of Wichita, Kansas, parties of the second part, witnesseth:

"Whereas, parties of the first part have by warranty deed, dated December 31, 1930, and in consideration of the sum of six thousand dollars ($6,000), paid to the parties of the second part, purchased and acquired title to, and taken possession of, real estate situated in Sedgwick county, Kansas, described as follows: Lots 63 and 65, Lawrence avenue, old town addition, city of Wichita; and it is desired hereby to give to the parties of the second part an option to repurchase said real estate;

"Now, therefore, in consideration of one dollar and other valuable consideration, receipt of which is hereby acknowledged, the parties of the first part hereby give to the parties of the second part an option until July 1, 1933, to purchase the above mentioned real estate upon the following terms:

"A thirty days' written notice must be given to the parties of the first part prior to the date the option is to be exercised, the parties of the second part shall tender to the parties of the first part the purchase price as hereinafter set forth. This means that the last date on which a notice can be given is June 1, 1933. The giving of the notice shall not bind the parties of the second part to complete the purchase.

"A purchase price, if the option is exercised, shall consist of eleven thousand five hundred dollars, plus an amount which would be equivalent of interest at the rate of eight per cent per annum upon said purchase price from the date of this contract until the date the purchase price is paid plus all sums which parties of the first part between this date and the date the purchase price is paid shall pay out on account of said property, including interest upon the mortgage now standing against the property, and payments upon the principal thereof, all taxes and assessments, insurance, repairs, maintenance, hire of attorneys and agents, and any other reasonable expense incident to the management of said property, until the date the purchase price is paid. As an offset to said addition to the purchase price, the parties of the second part, in case the option is exercised, shall receive credit for ninety-five per cent (95%) of all net rentals collected on said property from this date until the purchase price is paid. The parties of the first part prior to the exercise and consumma-

tion of the option shall be accountable only for actual rents received and not for rental value.

"Time shall be the essence of this contract, and the option shall cease and terminate if the notice to exercise same shall not have been given by 12 o'clock on June 1, 1933, and if the purchase price shall not have been paid by 12 o'clock noon of the thirtieth day after the giving of the notice.

"The benefits and burdens of this contract shall extend to the heirs, executors, administrators and assigns of the respective parties.

"In witness whereof, the said parties have hereunto subscribed their signatures this 31st day of December, 1930.

> (Signed)  THE PENCE VIEW FARMING CO.,
> (Signed)  Per IRIS PENDLETON, Treas.,
> *Party of the First Part.*
>
> (Signed)  FLORIAN LINDBERG,  ·
> (Signed)  DOROTHY F. LINDBERG,
> *Parties of the Second Part.*

"Should parties of the second part purchase the above property on the above terms prior to March 31, 1931, the price of purchase shall be $2,500 less than the above figures.

> THE PENCE VIEW FARMING CO.,
> PER IRIS PENDLETON, *Treas.*"

One of the questions fully argued by both parties to this action, upon which they cite numerous decisions, is the parol evidence rule. Our court has had occasion to apply the rule to the facts and circumstances of many cases, excluding it ordinarily where it tends to alter, vary or contradict the terms of a written instrument, but admitting it freely, especially in equity cases like this one, to supply matters entirely omitted from the written contract, or to explain the intention of the parties as derived from their acts or conduct as well as their words. The tendency has been so general in this line of cases to learn the intention of the parties that the rule has become very elastic, and it would serve no good purpose in this particular case where the trial court may have admitted some such evidence near the border line on behalf of the plaintiff, who is the appellant here, to attempt a discrimination concerning the same.

The trial court made the following findings of fact and conclusions of law, the former including three additions suggested by plaintiff after they were submitted by the court, no objection being made thereto by the defendant:

"FINDINGS OF FACT AND CONCLUSIONS OF LAW AS AMENDED

"The plaintiff brings this action to have a deed declared a mortgage.

"The court finds:

"1. That on the 31st day of December, 1930, and for some time previous thereto the plaintiff was the owner and in possession of lots 63 and 65 on

Lawrence avenue in the original town, now city, of Wichita, Sedgwick county, Kansas.

"This is a business property in the second block on North Lawrence avenue.

"There was a mortgage on it of $26,000 to the Wheeler Kelly Hagny Trust Company. This mortgage was made about August, 1930, and given for a period of ten years.

"That the plaintiff was offered $42,000 cash for the said property subject to the $26,000 mortgage thereon, by James H. Stewart, a man financially able to complete said purchase, which offer was declined by the plaintiff; that the plaintiff had an offer of $8,000 cash and exchange of other real property for his equity in said premises, which offer was made by John H. Burns, who was financially able to carry out his offer, and which offer was declined by the plaintiff.

"2. That the plaintiff was considerably in debt and was in need of money to operate a college of music. He had been attempting to secure a second mortgage upon this property, but had been unsuccessful. Any second mortgage that he might have secured would have cost him considerably more than the amount of the mortgage for a commission. He was well acquainted with the defendant, Iris Pendleton, who was president of the defendant, the Pence View Farming Company.

"Pendleton finally agreed to let him have $6,000, out of which the 1930 taxes and the interest that was then due on the first mortgage were to be paid.

"The plaintiff executed a warranty deed signed by himself and wife conveying the property to the Pence View Farming Company, and at the same time this company executed an agreement to reconvey the property to the plaintiff upon the payment of $11,500. This agreement provided that the plaintiff was to have thirty months in which to repurchase the property, and provided that the plaintiff was not required to repurchase it.

"3. The value of the property at that time was about $42,000, subject to the mortgage of $26,000 and accrued interest to February 1, 1931, not yet due, of $745.33, and taxes for the year 1930 of about $1,536.62.

"4. The court further finds that it was the understanding and agreement of the plaintiff and defendant company that defendant company was to take charge and control of the real property for the purpose of collecting the rent and income from said property, and defendant company was to receive 5 per cent of the gross for its services in managing the property and was to account to the plaintiff for the remainder of the income therefrom by paying the taxes on the property, paying the interest on the first mortgage and paying the insurance, repairs and upkeep of the property, and applying the remainder of the income on the repurchase price in the event the plaintiff should repurchase the property.

"5. The defendant, Iris Pendleton, acting for the defendant, the Pence View Farming Company, took charge and control of the property on the first day of January, 1931, and continued to collect the rents and have charge of the building.

"6. The court further finds that Iris Pendleton was president and treasurer of the defendant, the Commercial Securities Company, at the time of the

making of the deed, and the court further finds that the said Commercial Securities Company and the said Iris Pendleton are making no claim to said property by virtue of any of the transactions herein set forth.

"7. The court further finds that at the time of the execution of the deed the depression was well under way and that ever since said time this property has depreciated in value.

"8. The plaintiff did not at any time, in connection with the transaction in question, promise to repay the $6,000 that he obtained, and there was no debt existing from him to any of the defendants.

"9. The holder of the first mortgage of $26,000 is at this time threatening to foreclose the same.

"CONCLUSIONS OF LAW

"1. From the foregoing findings of fact, the court concludes as a matter of law that the deed made by the plaintiff to the defendant company was not given as security for a loan, and that the deed in question is not a mortgage, and that judgment should be for the defendants."

The important features in the deed, the option contract and the findings are that the deed is the usual form of a general warranty deed, its consideration was one dollar and other valuable consideration, and it was subject to a mortgage for $26,000. The option contract was made by the grantee in the deed to both the grantors in the deed the same day the deed was dated and executed, viz., December 31, 1930; that the consideration in the option contract was $6,000. It recognized immediate possession of the grantee of the deed. It gives an option to plaintiff and his wife, the grantors of the deed, until July 1, 1933, a period of two and one-half years, to repurchase the real estate conveyed by the deed for $11,500 with eight per cent interest from date by giving thirty days written notice of such intention. It provided that time was of the essence of the contract, and that the giving of such notice shall not bind the parties desiring to repurchase to complete the purchase. If they repurchase they shall be entitled to ninety-five per cent of the actual rents received during the intervening period. In the second paragraph of the findings it is said "Pendleton finally agreed to let him have $6,000, out of which the 1930 taxes and the interest that was then due on the first mortgage were to be paid." In the eighth finding the court found plaintiff did not at any time "promise to repay the $6,000 that he obtained, and there was no debt existing from him to any of the defendants."

The appellant contends "that the court erred in not finding what the intention of the parties was, so that it might be determined whether there was an implied obligation to repay the money re-

ceived. Also that the court erred in not concluding as a matter of law, from the facts as actually found by the court, that there was an implied obligation to repay the money borrowed, which constituted the debt secured by the deed." In other words, the appellant contends in the second place that the findings of the court show there was an implied obligation to repay borrowed money secured by the deed, but if the findings do not show such implied obligation, that it was an omission and error of the trial court. Again, the appellant insists that the earlier findings of fact inferred that it was the intention of the parties that the transaction was intended as a loan and security, and that finding No. 8, that there was no existing debt and no promise to pay, was a conclusion of law rather than a finding of fact.

The appellant insists that the trial court failed to specifically find what the intention of the parties was, so that it might be determined therefrom as a question of law whether there was an implied obligation to repay, distinguishing between an express obligation and an implied obligation to repay. Neither of these two points were brought to the attention of the trial court by the plaintiff in his motion for amended findings of fact. The theory of the appellant now is that the findings and the evidence strongly show the intention of the parties was that the deed was given as security for the repayment of money advanced as a loan, and, that while there was no express promise to pay a debt, there existed an implied obligation to repay the money received. .A paragraph in appellant's brief best expresses his present theory of the case on appeal.

"The plaintiff did not claim there was any debt already in existence and did not attempt to establish there was an actual promise to pay; but maintains the facts clearly establish it was the intent of the parties that the deed was given as security for the repayment of the money advanced as a loan, which is a question of fact and not a question of law. And as a consequence of the loan, there was an implied obligation to repay the money received, thereby creating a debt, and that the transaction was an equitable mortgage."

In other words, the appellant believes the findings and the evidence plainly show that the transaction between the parties was intended for a loan, and if it was a loan, an implied obligation existed to repay the same.

Looking first at the findings, we observe that the trial court found in detail the situation and desires of the plaintiff. He was badly in debt and in need of money to conduct the business in which he

was engaged. He made many attempts to secure a second mortgage on the property, but without success. He had at least one *bona fide* offer to sell for $42,000 in cash, subject to the $26,000 mortgage. He had an offer for exchange for $8,000 in cash and balance in trade for other property. Both of which offers the court found he declined. There is no question from the court's findings as to what the plaintiff wanted to do, and that was to borrow and give a second mortgage, but the court said in this he was unsuccessful. He declined the offers of purchase and exchange, and then the court proceeds to outline what he did do by giving a warranty deed and taking an option contract back, a compromise between the loan he was unsuccessful in getting and the sale and exchange which he declined.

Appellant stresses the following language in one of the court's findings as a preface to the details of giving a deed and taking an option contract back:

"Pendleton finally agreed to let him have $6,000, out of which the 1930 taxes and the interest that was then due on the first mortgage were to be paid."

Appellant insists that the words "agreed to let him have $6,000" could have no other meaning than agreeing to loan him that amount, although they follow the finding that he was unsuccessful in securing any loan, and were immediately followed by the facts as to the making of the warranty deed and the option contract.

The trial court found the property was worth $42,000, subject to the mortgage of $26,000 thereon, but had depreciated in value at the time of the trial on account of the depression.

Turning now to the evidence, both parties admit there is a conflict therein, and appellant evidently thinks this court is fully qualified to weigh such conflicting evidence when he says in his argument that appellant earnestly contends "that the evidence establishes the plaintiff's case by a clear, convincing preponderance of the evidence." The review and consideration of the evidence of the plaintiff and his corroborating witnesses, if we disregard the conflicting evidence of the defendant Pendleton and his corroborating witnesses and the written documents and exhibits signed by the plaintiff, would strongly support his view of the matter that the intention of the parties was to make a loan secured by the warranty deed. But the usual province of this court in such matters is to determine from the evidence whether or not there is sufficient evidence to sup-

port the findings of the trial court, and especially is this true when the evidence is conflicting. In the case of *Wagler v. Tobin,* 104 Kan. 211, 178 Kan. 751, it was said in the syllabus:

"Only questions raised and determined in the district court are open to review on appeal."

"The finding of the trial court upon conflicting and substantial evidence as to the alleged alteration is conclusive upon appeal." (¶¶ 2, 4.)

A careful examination of the evidence convinces us there is sufficient evidence to support the findings of the trial court. In the case of *Bank v. Grisham,* 105 Kan. 460, 185 Pac. 54, it was held:

"Rule followed that when there is sufficient evidence to support a trial court's finding of fact, it is of no importance on appeal that there was considerable testimony given at the trial which, if believed, would have led to a contrary finding of fact." (Syl. ¶ 4.)

In the case of *McConnell v. Rhone,* 128 Kan. 257, 276 Pac. 830, it was said:

"Where a written instrument on its face appears to be a contract for the sale of real property, and there is oral evidence which tends to prove the instrument is a mortgage to secure the payment of the remainder of the purchase price of the property, and there is other oral evidence which tends to prove that the instrument is not a mortgage, but is a contract for the sale of the property, the finding of the court that the instrument is a contract for the sale of the property is conclusive on appeal." (Syl. ¶ 2.)

See, also, the case of *Solomon v. Lampl,* 135 Kan. 469, 11 P. 2d 1028, where it was said:

"This court has nothing to do with the evidence further than to decide whether the trial court's findings of fact, general or special, are supported by substantial and competent evidence." (p. 478.)

This brings us back to the proposition heretofore stated, but not discussed, about the attention of the trial court not having been called to this supposed omission in the findings as to the intention of the parties to the transaction when the motion for additional findings was filed. To make the matter strictly reviewable the trial court should have declined to make such a finding. All the additional findings asked by plaintiff were made and allowed by the trial court. It was said in *Clark v. Linley Motor Co.,* 126 Kan. 419, 268 Pac. 860:

"The rule has frequently been announced, and should be applied here, that whenever a litigant has a meritorious proposition of law which he is seriously pressing upon the attention of the trial court he should raise that point in

such clear and simple language that the trial court may not misunderstand it, and if his point is so obscurely hinted at that the trial court quite excusably fails to grasp it, it will avail naught to disturb the judgment on appeal." (p. 422. See, also, *Threshing Machine Co. v. Francisco,* 106 Kan. 704, 189 Pac. 981.)

Appellant cites a number of decisions from Kansas and other states to the effect that parol evidence is admissible to show that a deed absolute in form is in reality a mortgage, among which is *Rains v. Weiler,* 101 Kan. 294, 166 Pac. 235; *Myers v. Mills,* 109 Kan. 734, 201 Pac. 856; *Kolar v. Eckhardt,* 119 Kan. 518, 240 Pac. 947; *Handrub v. Griffin,* 127 Kan. 732, 275 Pac. 196; and *Republic Mutual Fire Ins. Co. v. Johnson,* 128 Kan. 323, 278 Pac. 48. There was no occasion for the trial court, nor this court, to disagree with or ignore these decisions. The only question is whether or not they apply to the findings of fact and questions involved herein. We recognize, of course, there are implied obligations under certain states of facts, and that the existence of a debt is always necessary to make a deed a mortgage. The very language of the documents signed is sometimes the turning point, as it appears to have been in *Lincoln State Bank v. Breazier,* 122 Kan. 423, 251 Pac. 1080:

"The three instruments executed on June 6, 1923, were: (*a*) a general warranty deed from defendant to plaintiff (subject to a mortgage of $10,000), (*b*) an instrument by which plaintiff gave defendant an option to purchase the land at any time within one year from date at a named, or determinable price, and (*c*) an instrument by which the land was leased by plaintiff to defendant for one year—the defendant to farm the land and to pay, or deliver, to plaintiff a certain share of the crop as rent. This had a stipulation indorsed thereon, in substance, if defendant exercised his option to purchase, the rentals he had paid, if any, should be credited on his 'general indebtedness.' Had it not been for these words, 'general indebtedness,' used in this stipulation, there could have been no question but what the deed was a conveyance of title and not a security for a debt. (*Yost v. Bank,* 66 Kan. 605, 72 Pac. 209; *Frankovich v. Weigant,* 104 Kan. 84, 181 Pac. 945; *Lamborn v. State Bank,* 115 Kan. 415, 223 Pac. 293.) The words are used so that they apply only in the event defendant exercised his option to purchase, an event which never occurred, and had it occurred it may well be said there would have been an indebtedness, since the written instruments do not specify the terms or manner of payment by defendant in the event he exercised his option to purchase. The expression was an inapt one because of the possible uncertainty of its meaning. Had the stipulation provided that in the event defendant exercised his option to purchase, any rent paid should apply upon the purchase price—not an uncommon provision in leases where the lessee is given an option to purchase the property within a given time at a fixed price—there would have been no room to question the meaning of the writing; no

one would have considered it as evidencing an indebtedness. But the words used can have no other meaning here, in view of the fact there was no indebtedness between the parties which continued after the instruments of June 6, 1923, were executed, and would be none unless defendant exercised his option to repurchase, which he never did, and since the words used applied only to the circumstances of the parties in the event defendant exercised his option to purchase." (p. 427.)

A very similar decision is *Lamborn v. State Bank,* 115 Kan. 415, 223 Pac. 293, where the syllabus is as follows:

"Record examined, and the evidence held sufficient to support a judgment that a warranty deed was intended to be an absolute conveyance and not a mortgage; and that a contemporaneous written instrument between the parties, aside from containing matters not here pertinent, merely gave the plaintiffs a privilege to sell or trade the property upon terms with which the plaintiffs did not comply and within a time specified which had expired at the date of the judgment."

The option contract in the case at bar giving the plaintiff the privilege for thirty months to repurchase the property, and specifically providing that the giving of the thirty-day notice of his election to repurchase should not bind him to complete the purchase, is quite in line with the decisions last above quoted. And this option contract, together with the letter written the garage tenant, are strong features in favor of the findings of fact when much of the oral testimony is hopelessly in conflict.

We think the findings are sufficiently supported by the evidence, and also that they plainly show the intention of the parties to have been to make an absolute conveyance with an option to repurchase within a definite time, which had expired as to the time for giving such notice, before this action was commenced. We also find that the findings of fact support the conclusion of law made by the trial court.

The matter of usury and other questions raised in the briefs need no further discussion because of the conclusion reached.

The judgment is affirmed.