No. 33,529

THE WESTERN KANSAS OIL AND REFINING CORPORATION, *Appellant,*
v. G. K. HARRIS and CHARLES McCRAE, *Appellees.*

(76 P. 2d 765)

Opinion filed March 5, 1938.

*Austin M. Cowan, C. A. McCorkle, W. A. Kahrs, Robert H. Nelson, Henry L. Butler, Paul H. White,* all of Wichita, and *Rubert G. Martin,* of Lyons, for the appellant.

*L. E. Quinlan,* of Lyons, and *Andrew Ellison,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

ALLEN, J.: This is an action for the recovery of a broker's commission for obtaining a drilling contract on an oil and gas lease in Rice county. The jury returned a verdict for defendants. The court rendered judgment for defendants, and plaintiff appeals.

The petition alleged that on July 6, 1935, the defendants, together with the White Rock Petroleum Company, were the owners of an oil and gas lease on certain lands; that on or about that date the defendants employed the plaintiff to secure a drilling contract on their property; that on or about July 10, 1935, the plaintiff obtained the Bradley Oil Company that was ready, able and willing to enter into a contract with defendants for the drilling of the wells; that thereafter defendants entered into a drilling contract with the Bradley Oil Company; that defendants promised to transfer to plaintiff as its commission a one-sixteenth interest in the oil and gas lease, and that this interest was of the value of $10,000. Plaintiff further alleged that the services rendered by plaintiff were of the fair and reasonable value of $10,000.

The answer contained specific denials of the allegations above set forth. Upon the issues thus presented a trial was had. The jury returned a verdict for the defendant, which was approved by the court.

On the issue of whether or not there was an express contract of

employment, the evidence was conflicting. As the verdict of the jury was in favor of the defendant, the plaintiff admits that question is out of the case.

It is now contended that plaintiff is entitled to judgment on the undisputed evidence as to the implied contract, and that is the only question before this court.

The court gave the following instruction:

"You are instructed that an implied contract of employment arose in this case if plaintiff performed services, the benefits of which were accepted or utilized by the defendants with the knowledge that the plaintiff expected compensation therefor or under such circumstances that a reasonably prudent man would have understood that plaintiff expected compensation therefor. In such a situation the law implies a promise on the part of the defendants to pay plaintiff the reasonable value of such services, if any. So here, if plaintiff introduced a prospective buyer, the Bradley Oil Company, to the defendants, and as a result of such introduction an agreement was ultimately reached between the Bradley Oil Company and the defendants for the sale of one-half interest in said lease, and defendants knew or should have known that plaintiff was not acting as a mere volunteer but expected compensation for its services, if any, then there was an implied agreement on the part of the defendants to pay plaintiff the reasonable value of its services."

This instruction is approved and relied upon by both parties to this controversy.

On July 6, 1935, the White Rock Petroleum Company employed the plaintiff to secure a purchaser for an undivided half interest in an oil and gas lease on certain lands. On July 10, 1935, the plaintiff wrote the defendants, in which the contract with the White Rock concern was set forth, and in which it was stated that: "Acting under that employment we sold this interest on those terms to the Bradley Oil Company, who is now willing to close the trade. We have since learned that you gentlemen are joint owners with White Rock in this leasehold, and think it advisable to have some confirmation of the transaction—some expression from you as to your willingness to enter into such a sale of the one-half interest on the said terms." The letter invited the defendants to endorse their acceptance upon an enclosed copy of the letter to be available for closing the transaction with the Bradley Oil Company.

It is admitted the defendants refused to endorse their acceptance on this proposal. Mr. Bruce, president of the plaintiff company, testified:

"I had secured Mr. Bradley to enter into the arrangement before the 10th of July, possibly the 8th or 9th, and then I went back and wrote the letter. I did not attempt to induce Mr. Bradley to make this deal after the 10th, as he had already agreed to take it."

Mr. Bradley testified:

"I had been dealing directly with McCrae and Harris and after the first proposed contract Mr. Bruce did not appear in the deal any further as I recall."

There was testimony which tended to show that in January, 1936, at the instance of Mr. Bradley, the defendants McCrae and Harris induced various persons who owned an interest in the lease to sell an undivided one-half interest in the lease to Bradley for one free well to the sand and $12,500 in cash, of which the defendants received no part.

The defendant McCrae testified:

"Mr. Bruce handed the letter to me personally and submitted this proposition to me. He did not at that time make any statement to the effect that he was expecting or claimed a commission or an interest in this oil and gas lease from me if he found a purchaser for a half interest in the lease. . . . With reference to entering into a contract of this kind, I told him that I didn't own such interest and didn't know where I could get them. . . . I told Mr. Bruce we couldn't sign it, and handed it to Mr. Harris and told him that I could not sign it and I never signed the contract. . . . I never promised to pay Mr. Bruce or the plaintiff any money or any interest in this lease for any services he might perform."

The defendant Harris testified:

"I was in Wichita on July 10, 1935. Mr. Bruce brought and delivered to me a letter in substance the same as plaintiff's exhibit 2. I did not sign the acceptance of this offer as it was submitted in the letter. I owned no interest in the lease on July 10, 1935. Subsequent to July 10, 1935, I acquired and I now own a one-thirty-second interest. . . . I never told Mr. Bruce that I would give him a one-sixteenth interest or pay him any money for anything he might have to do so far as I was concerned with this lease. I never made any promise to him of any money for anything he did or was about to do in the case. He never has made any demand upon me for any money. I was present at the conference between Mr. Bruce and Mr. McCrae and myself on July 10, 1935. At the second conference Mr. Bruce had a contract which he submitted to Mr. McCrae and myself for our approval. I did not sign it and to my knowledge neither did Mr. McCrae. I told Mr. Bruce that I didn't own any interest. That was the substance of the conversation. He left this contract with us and asked us to look it over and see if we could not work out a deal. At that time I didn't represent any interest holders in this lease and I so told Mr. Bruce and that is the reason I gave to Mr. Bruce why I could not sign the contract."

Mr. Bruce further testified:

"I made a demand in the Allis Hotel to Mr. McCrae, in the presence of his attorney, for the commission sometime in the early part of 1936. . . . That was at the Allis Hotel. Mr. Ellison, their attorney, was present. Mr. Harris was not in the room. I believe that was in the middle of January or February of 1936. I made a demand to Mr. McCrae. I am not sure about Mr. Harris."

There was testimony that before the final contract between the defendants and the Bradley Oil Company was entered into, various persons holding fractional interests in the lease assigned their interests to McCrae so that they could be transferred to the Bradley Oil Company. There was also testimony that sometime after the conference between Bruce, representing the plaintiffs, and the defendants, in July, 1935, and the closing of the deal with Bradley, in January, 1936, the White Rock company sold its interest in the lease to Mr. Lassen, a director and vice-president of the plaintiff company.

The jury heard the testimony of the witnesses. They were the sole judges of the weight of the evidence and the credibility of the witnesses. From the evidence, the jury might infer that the plaintiff was employed by the White Rock company to do the work it is now suing these defendants for; that plaintiffs had contacted Bradley and had performed their part of the contract with the White Rock company before the 10th of July, 1935; that defendants were not parties to the agreement between the plaintiffs and the White Rock company; that the defendants had no interest in the lease in July, 1935; that McCrae never had any beneficial ownership therein at any time; that the one-thirty-second interest of Harris was not acquired before the final deal was concluded in January, 1936; that the defendants received no part of the $12,500 paid by the Bradley Oil Company pursuant to the terms of the contract in January, 1936.

We are therefore unable to agree with the contention of the plaintiff that he was entitled to judgment on the undisputed evidence, or that the motion for a new trial should have been granted. Whether the plaintiff was the effective cause in procuring the contract—whether the plaintiff, prior to January, 1936, notified the defendants that a commission was expected, and whether the defendants received any benefit whatever, were questions upon which the evidence was in conflict. There was conflict in the evidence as to the existence of an implied contract. The jury by their verdict resolved these questions in favor of the defendants. The rule often announced by this court is that facts determined by a jury on conflicting evidence are conclusive and will not be disturbed on appeal. (*Carpenter v. Aldridge*, 133 Kan. 465, 300 P. 2d 1065; *Pease v. Reser*, 122 Kan. 433, 252 Pac. 211; *Lindberg v. Pence View Farming Co.*, 140 Kan. 138, 33 P. 2d 1102.)

For the reasons stated, the judgment must be affirmed. It is so ordered.