Lincoln State Bank v. Breazier.

---

No. 27,052.

THE LINCOLN STATE BANK, *Appellee,* v. GEORGE W. BREAZIER, *Appellant.*

SYLLABUS BY THE COURT.

1. TRIAL—*Province of Court—Construction of Writings—Action for Possession of Realty.* In an action for the possession of real property, when the rights of the parties depend upon the construction of written instruments, it is the duty of the court to construe the instruments and to direct a verdict or render judgment accordingly.

2. MORTGAGES—*Absolute Deed as Mortgage—Circumstances Determining Character—Debt to be Secured.* In determining whether an instrument in the form of a deed is a conveyance, or a mortgage, the test is whether any debt remains to be secured by the instrument.

3. DEEDS—*Instruments Construed to be Deed.* A deed, lease and option to purchase examined and *held,* the deed was a conveyance, not a mortgage.

Appeal from Lincoln district court; DALLAS GROVER, judge. Opinion filed January 8, 1927. Affirmed.

Juries, 16 R. C. L. 184. Mortgages, 41 C. J. pp. 333 n. 12, 354 n. 62; L. R. A. 1916B 18; 19 R. C. L. 261. Trial, 38 Cyc. pp. 1522 n. 1, 1565 n. 83.

O. A. Wilson, of Jetmore, for the appellant.

E. A. McFarland, of Lincoln Center, C. W. Burch, B. I. Litowich and La Rue Royce, all of Salina, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action by plaintiff, out of possession, claiming to own certain real property in fee simple, pleading fully the instruments and facts upon which it bases such claim, asking that defendant be required to set forth all claims he has to the title or possession of such real property, that such claims of defendant be adjudged to be void, that plaintiff be adjudged the absolute owner in fee simple of the real property and entitled to the immediate possession of the same, and that defendant, and all persons claiming by, through, or under him, be barred of any right, title or interest in or to the real property. There was a second cause of action in which plaintiff alleged that defendant had unlawfully deprived plaintiff of possession, to its damage in a sum named, for which sum judgment was prayed. The defense was that there was an indebtedness from plaintiff to defendant, and that the instrument relied upon by plaintiff evidenced such indebtedness. The trial proceeded before a jury. At the close of all the evidence the plaintiff demurred to defendant's evidence pertaining to the first cause of action and moved the court to render judgment in its favor upon the first cause of action. The demurrer and motion were sustained. Plaintiff dismissed its second cause of action. The court adjudged plaintiff to oe the owner in fee simple of the real property, and that it have immediate possession thereof, barred defendant from any and all rights therein, and directed the sheriff to put plaintiff in possession. Defendant's motion for a new trial was overruled, and he has appealed.

The real question to be determined is whether a deed by defendant to plaintiff was a conveyance of the property, or evidenced an indebtedness. The facts disclosed by the evidence are not seriously in dispute, and are substantially as follows:

Defendant, a single man, owned a farm of 160 acres in Lincoln county, which was encumbered by a mortgage of $10,000. He owed the plaintiff bank two notes. In November, 1922, these notes were past due and the bank's officials asked defendant for security and suggested taking a second mortgage on his farm. Defendant refused

to give security.  The bank sued on the notes, and in March, 1923, obtained a personal judgment against defendant for $1,842, and costs, the judgment to bear eight per cent interest.  Early in June, 1923, defendant wanted to get the judgment off the record.  He had a talk with the president of plaintiff bank, who told him that the bank would release the judgment on one condition only—that defendant give the bank a warranty deed to the land, the bank to pay back interest and taxes and figure in the costs in the way of accrued interest and expenses that might enter into it, and give him a year's option to repurchase the land.  After some discussion, and on June 6, 1923, defendant executed to plaintiff a general warranty deed for the land subject to the mortgage of $10,000.  The deed recited a consideration of $2,608.36.  This was made up of the judgment, interest and costs, attorney's fee, taxes for 1922, and interest on the first loan.  On the same date plaintiff executed to defendant an instrument giving him the option to repurchase the land at any time within one year upon the payment by defendant to plaintiff of $2,608.36, with eight per cent interest thereon from date, "and the further sum to cover any and all taxes paid by said Lincoln State Bank after this date and also for all interest that may be paid by said bank to the holder of the first mortgage  .  .  ."  In the event the option was exercised the conveyance was to be made by plaintiff to defendant free of encumbrance except the $10,000 first mortgage.  On the same date plaintiff executed a written lease of the real property to defendant providing the defendant should occupy and cultivate the farm for one year and should pay as rental to first party one-third of the crops which might mature on the land before June 6, 1924, to be delivered without expense to first party, and in which it was "agreed that whatever money is received by first party for rentals shall be credited on the general indebtedness of second party to first party."  Before defendant's notes were reduced to judgment the bank carried them on its books as bills receivable. When reduced to judgment the bills-receivable account was credited, and the account of judgments owned was debited.  When the deed was received, the judgment account was credited and the item was then carried as "other real estate owned," and the judgment was released as having been fully paid, on the judgment docket in the office of the clerk of the district court.  On October 23, 1923, defendant paid plaintiff $110 on rentals.  In December, 1923, de-

fendant thought he might sell the land to advantage at a public sale, and got permission of plaintiff to offer it at public sale. This sale was advertised, about ninety people were present, and the highest competitive bid was $81 per acre. Plaintiff bid $82.25 per acre. After the sale defendant contended there was some misunderstanding in the bidding, and plaintiff waived its right to take the land at that bid and reëstablished the option with the defendant by a writing which recited, by way of preamble, the deed executed by defendant to plaintiff June 6, 1923, the lease and the repurchase agreement of that date, the attempted public sale of the property in December, and the misunderstanding of defendant with relation thereto, and proceeds:

"Now, therefore, this agreement is made as a final agreement and on the following conditions: First party agrees that the repurchase option mentioned be returned to second party (here follow provisions as to crops, method of farming, one-third of the crop to be delivered to plaintiff, some spring crop might be put in, and in effect continuing the lease until August 1, 1924). It is further agreed that second party will give possession of all land and buildings on said quarter section . . . on August 1, 1924, and that he may go on said land after that date to care for growing crops of which he has a share, but for no other purpose."

This instrument contained an additional stipulation, as follows:

"It is further agreed by both parties hereto *that up to and including* June 6, 1924, either party hereto may sell said land for fourteen thousand and five hundred dollars ($14,500), any amount in excess of the amount then owing first party to go to second party *and that the $110 paid* by second party on October 23, 1923, and any further amounts paid by second party at any later date shall be credited on the general indebtedness of second party and the interest on any amounts so paid shall cease on the date of payment."

In April, 1924, the $10,000 indebtedness on the land having come due an agreement was made between the parties that the first party should pay the indebtedness and make a new loan not exceeding $10,000 in two loans, the first to be $8,000 and the second to be $2,000, without affecting defendant's option to purchase. Defendant did not exercise his option to purchase, and in July, 1924, plaintiff gave him notice to quit, and another notice in August, and filed a suit for forcible detainer before a justice of the peace. Defendant answered and contended that the deed was given to the bank to secure his indebtedness. The justice thought the title to the real estate was involved and certified the case to the district court. Plaintiff dismissed that case, then brought this action.

Appellant contends that this is, in effect, an action for the possession of real property, and therefore that he had a right to a trial by jury, under the statute (R. S. 60-2903). That is true, of course, if there were issues of fact. Here all the material evidence was in writing, which it was the duty of the court to construe. If a proper construction of the written instruments requires a judgment for plaintiff, the fact that the court sustained plaintiff's motion for judgment instead of instructing the jury to return a verdict for plaintiff and rendering judgment on such verdict, is of no importance. The real question in either event is whether the court correctly construed the writings between the parties. In determining the question we need consider only the written instruments of June 6, 1923, for the later ones are modifications only of those, for reasons desired by one party or the other, without changing their primary purpose or effect. The test, repeatedly applied by this court, as to whether an instrument in the form of a deed is a conveyance or is intended as a security for a debt, hence to be treated as a mortgage, is to be determined by whether there continues to be any debt for the instrument to secure. (*M'Namara v. Culver,* 22 Kan. 661; *Fabrique v. Mining Co.,* 69 Kan. 733, 77 Pac. 584; *Hoyt v. National Bank,* 115 Kan. 167, 222 Pac. 127.) Here there was no debt which continued to exist. The bank released its judgment of record against defendant as having been paid—the very thing defendant wanted done. Plaintiff carried the land as "other real estate owned." There was no indebtedness existing from defendant to plaintiff.

The three instruments executed on June 6, 1923, were (*a*) a general warranty deed from defendant to plaintiff (subject to a mortgage of $10,000), (*b*) an instrument by which plaintiff gave defendant an option to purchase the land at any time within one year from date at a named, or determinable, price, and (*c*) an instrument by which the land was leased by plaintiff to defendant for one year —the defendant to farm the land and to pay, or deliver, to plaintiff a certain share of the crop as rent. This had a stipulation indorsed thereon, in substance, if defendant exercised his option to purchase, the rentals he had paid, if any, should be credited on his "general indebtedness." Had it not been for these words "general indebtedness" used in this stipulation there could have been no question but what the deed was a conveyance of title and not a security for a debt. (*Yost v. Bank,* 66 Kan. 605, 72 Pac. 209; *Frankovich v.*

*Weigant,* 104 Kan. 84, 181 Pac. 945; *Lamborn v. State Bank,* 115 Kan. 415, 223 Pac. 293.) The words are used so that they apply only in the event defendant exercised his option to purchase, an event which never occurred, and had it occurred it may well be said there would have been an indebtedness, since the written instruments do not specify the terms or manner of payment by defendant in the event he exercised his option to purchase. The expression was an inapt one because of the possible uncertainty of its meaning. Had the stipulation provided that in the event defendant exercised his option to purchase, any rent paid should apply upon the purchase price—not an uncommon provision in leases where the lessee is given an option to purchase the property within a given time at a fixed price—there would have been no room to question the meaning of the writing; no one would have considered it as evidencing an indebtedness. But the words used can have no other meaning here, in view of the fact there was no indebtedness between the parties which continued after the instruments of June 6, 1923, were executed, and would be none unless defendant exercised his option to repurchase, which he never did, and since the words used applied only to the circumstances of the parties in the event defendant exercised his option to purchase.

Other questions argued are so related to those we have previously discussed that there is no necessity of taking them up separately. The judgment of the court below is affirmed.

Burch, J., not sitting.