No. 28,610.

F. O. BENSON and THE IOLA STATE BANK, *Appellees*, v. U. H. ROSEBAUGH et al., *Appellants*.

(278 Pac. 41.)

Opinion filed June 8, 1929.

*James G. Sheppard,* of Fort Scott, for the appellants.

*S. A. Gard, G. R. Gard* and *Kenneth H. Foust,* all of Iola, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: In this action, tried to a referee, a deed was held to be a conveyance of real property rather than an equitable mortgage, and defendants have appealed. No motion for a new trial was filed, as provided by R. S. 60-3001. This limits our view of the record to the question whether the judgment is supported by the pleadings and the findings of fact. The evidence cannot be considered. (*Perkins v. Accident Association,* 96 Kan. 553, 152 Pac. 786; *Doty v. Shepard,* 98 Kan. 309, 311, 158 Pac. 1; *Printing Co. v. Paper Co.,* 115 Kan. 735, 736, 224 Pac. 898.) While the evidence was abstracted by appellants it was, on motion of appellees, stricken from the abstract by an order of the court made before the submission of the case on the merits.

In 1917 Katie Rosebaugh purchased the real property in contro-

versy for $12,000. In 1919 she and her husband, U. H. Rosebaugh, mortgaged it to the Union Central Life Insurance Company for $7,500. This was a first lien on the land and was payable by the amortization plan in fifteen years. In November, 1921, Katie Rosebaugh and her husband gave a mortgage on the property to the Iola State Bank (subject to the $7,500 mortgage) to secure a note for $1,892.22 due in six months. At some time before January 28, 1924, Katie Rosebaugh died intestate, leaving her husband and three children. The husband bought the interest of two of the children in the real property. The other child, Maurice B. Rosebaugh, became the owner of an undivided one-sixth interest in the property subject to the mortgages above mentioned. Because of default in making two of the annual payments on the first mortgage an action was brought to foreclose it in January, 1924. U. H. Rosebaugh was further indebted to the Iola State Bank in the sum of $1,155 secured by a chattel mortgage, and his son, H. A. Rosebaugh, was indebted to the First National Bank of La Harpe in the sum of $550 secured by a chattel mortgage. These two chattel mortgages described some of the same property. The Rosebaughs were desirous of reinstating the mortgage to the Union Central Life Insurance Company and having the suit brought by it dismissed, and desired the Iola State Bank to furnish the money necessary for that to be done. On January 28, 1924, U. H. Rosebaugh and Maurice B. Rosebaugh and his wife executed to F. O. Benson, who was in fact cashier of the Iola State Bank and acting for it, a deed to the real property, subject to the mortgage to the Union Central Life Insurance Company. The bank advanced the money, $1,570.66, to reinstate the first mortgage, which caused the action brought to foreclose it to be dismissed, and paid the $550 to the First National Bank of La Harpe. This made the total indebtedness of U. H. Rosebaugh to the bank, including that secured by the second mortgage to the bank on the real estate, amount to $5,557.55. On March 1, 1924, U. H. Rosebaugh executed to the bank two notes representing the indebtedness last above mentioned. One of these notes was for $900, due in one year, and was secured by a chattel mortgage. This note was later paid and is no longer in controversy. The other note was for $4,557.55. It bore interest at eight per cent per annum and was due in one year, and on March 1, 1924, F. O. Benson executed, in the form of a letter to U. H. Rosebaugh, the following instrument:

"In consideration of a deed which you have given to me for the following-described farm land and property, namely: The northeast quarter of section seventeen, township twenty-four, range nineteen, of Allen county, Kansas, and which deed was given me to secure and pay the following:

"Notes to Iola State Bank, Iola, Kan.

"Notes to First National Bank, La Harpe, Kan.

"Notes to Union Central Life Insurance Company, of Cincinnati, Ohio, and for accrued interest, costs and attorney's fees on the same, and which amounts are now represented in two certain notes due the Iola State Bank, Iola, Kan., as follows: One note for $900 and the other for $4,557.55, which are dated March 1, 1924, due in one year, at eight per cent interest from date, with interest payable semiannually:

"Now, therefore, I hereby agree to sell and deed you the above-described real estate, or deed it to anyone whom you may designate, at any time within two years from this date, which will be on or before March 1, 1926, under the following conditions:

"First. That you pay all notes, whether secured by this land or chattel mortgage, together with all interest, taxes and assessments due the Iola State Bank at the time of settlement.

"Second. That you pay all taxes as they accrue, and that you keep the property fully insured and in my favor.

"Third. That you assume any unpaid part of the first-mortgage loan now held by the Union Central Life Insurance Company or their assigns, together with all interest and charges.

"Fourth. If the above option is not accepted and settled by U. H. Rosebaugh on or before March 1, 1926, then this agreement will be null and void."

This was accepted in writing by U. H. Rosebaugh. On the same date F. O. Benson executed to U. H. Rosebaugh a lease, which is said to be on the standard form of farm leases, for a term of twelve months, beginning March 1, 1924, by the terms of which the lessee agreed to pay as rent for the land one-third of all the crops, and to pay $35 cash for the pasture rent.

The amended petition sets out three causes of action. The first sets out in detail the indebtedness of U. H. Rosebaugh to the bank. Copies of the deed, the note for $4,557.55, and the instrument of March 1, 1924, above quoted, were attached to and made a part of the petition. With respect to these instruments it was alleged:

"That at or about said time, to wit, March 1, 1924, and as evidencing the said indebtedness, the said U. H. Rosebaugh executed and delivered to the said Iola State Bank his promissory note in writing of that date in the sum of $4,557.55, due one year after date, with interest at eight per cent per annum from date, a copy of which is attached hereto marked 'Exhibit C' and made a part hereof, which said note is past due and wholly unpaid, and that the plaintiff is the owner and holder thereof.

"That the negotiations finally leading up to the execution of said note

and the payment of said sums of money had been pending for some time, and to induce the said plaintiffs to advance the said money necessary to save the said land from foreclosure and to extend the time of payment upon the other indebtedness owing by the said U. H. Rosebaugh to the said bank, the said U. H. Rosebaugh, Morris Rosebaugh and Martha Ellen Rosebaugh offered to execute a deed conveying the said lands to said F. O. Benson, and in consideration of the premises did execute and deliver a deed to him conveying the said lands, a copy of which deed is hereto attached, marked 'Exhibit D' and made a part hereof, and that at the same time said F. O. Benson, acting for himself and on behalf of the Iola State Bank, and the said defendant U. H. Rosebaugh entered into a written agreement by the terms of which the said F. O. Benson was to hold the said land for a period of two years, and if in that time the said indebtedness was paid, and the other indebtedness mentioned therein was paid, and the agreement otherwise complied with, the said land to be reconveyed to the said U. H. Rosebaugh, a copy of which agreement is attached hereto marked 'Exhibit E' and made a part hereof. That the said deed bears date January 28, 1924, but was in fact delivered and took effect at the time said note was given and contract made, the deed having been made some time prior to the final consummation of the deal, but during the time oral negotiations were pending."

It is further averred that the defendants had paid nothing on the note, and that by virtue of the terms of the agreement Benson should be ordered to transfer the lands to the bank in settlement of the indebtedness, or, if not so ordered, that it should be foreclosed. The second cause of action made the first a part of it and further alleged that since the execution of the instruments referred to in the first cause of action the bank had paid to the Union Central Life Insurance Company, and for insurance on the premises, sums amounting to $1,556.64, and it is averred that if plaintiffs be not decreed the owners of the land the bank should be subrogated to the rights of the first mortgagee and the lien should be foreclosed. The third cause of action is predicated on the lease, and it is alleged that the defendants had paid no rent, and it is averred that the plaintiffs were entitled to a decree barring defendants from further interest in the land and quieting plaintiffs' title thereto, and that if the court found it inequitable to do so, that the deed be foreclosed as a mortgage and plaintiffs have a lien on the crops raised on the premises by virtue of the lease. The prayer was for judgment against U. H. Rosebaugh on the first cause of action for $4,557.55, with interest since March 1, 1924; on the second cause of action for $1,566.64, with interest from the time payments had been made; that plaintiffs' claim be adjudged a lien on the land, subject only to that of the Union Central Life Insurance Company;

that the lands and crops be sold according to law, and the proceeds be applied, first, to the payment of costs and taxes, and, second, to the payment of plaintiffs' claim.

The answer of U. H. Rosebaugh admitted his ownership of five-sixths interest in the land, giving the mortgage to the Union Central Life Insurance Company, and the mortgage for $1,892.22 to the bank, and the execution of the stipulation of settlement of the foreclosure action brought by the Union Central Life Insurance Company. There was a general denial as to all other material allegations of the petition and a specific denial of indebtedness to plaintiffs. The prayer was that if the court found him to be indebted to plaintiffs he should be given the period of redemption provided by law. The answer of the defendants, Maurice B. Rosebaugh and wife, admitted ownership of a one-sixth interest in the property, the mortgage to the Union Central Life Insurance Company, and the execution of a stipulation by which the foreclosure action brought by that company was dismissed, but specifically denied that knowingly, or for any consideration, they had executed a deed to Benson, and averred that if they signed the same that their signatures were obtained without their knowledge, by fraudulent means and without consideration, and averred that the same was void as to them, and generally denied other material allegations of the petition.

The findings of fact are quite in detail. It will not be necessary to set them out at length. The gist of them, so far as here pertinent, may be thus stated: The *first* relates to the purchase of the farm by Katie Rosebaugh, the giving of the first mortgage to the insurance company, and of the second mortgage to the bank, the death of Mrs. Rosebaugh and the subsequent vesting of title to the property. The *second* recites the default in the first mortgage; that a suit was brought to foreclose it; that in January, 1924, U. H. Rosebaugh was indebted to plaintiff bank on the note secured by the second mortgage on the land and the note secured by chattel mortgage, and that a son, H. A. Rosebaugh, was indebted to the bank at La Harpe. The *third* recites that F. O. Benson was cashier of the plaintiff bank and that defendants dealt with him when transacting business at the bank. The *fourth*, that U. H. Rosebaugh entered into negotiations with plaintiffs for the purpose of preventing the foreclosure of the first mortgage; that as a result of

these negotiations defendants executed the deed of January 28, 1924, which deed was held by Benson until the deal was consummated; that as a part of the transaction Benson executed an agreement to reconvey the land to U. H. Rosebaugh upon his paying a note for $900 secured by a chattel mortgage and a note for $4,557.55, both payable to the bank, and paying the taxes and keeping the property insured, and that the plaintiff bank advanced the money to reinstate the first mortgage and have the foreclosure suit then pending dismissed. The *fifth* recites the execution by Benson of the farm lease. The *seventh,* that U. H. Rosebaugh agreed that if plaintiffs would pay the note of H. A. Rosebaugh to the bank at La Harpe he would assume the same and secure the plaintiffs on his real estate. *Sixth,* that at the time of closing their deal, about March 1, 1924, U. H. Rosebaugh owed plaintiff bank $5,457.55. *Eighth,* that this indebtedness was evidenced by two notes, one for $900, secured by a chattel mortgage which was later discharged, and the other for $4,557.55, dated March 1, 1924, and due in one year. *Ninth,* that this note was never paid, and that since it was given the plaintiff bank had made payments on the first mortgage and for insurance on the premises. *Tenth,* that about two years after their deal of March 1, 1924, Benson talked with U. H. Rosebaugh and informed him that plaintiffs could not carry the loan, as nothing was being paid on it, and that the land would have to be sold and the debt cleaned up; that U. H. Rosebaugh had paid plaintiffs nothing since March, 1924; and the facts concerning the filing of the amended petition are stated. The *eleventh* is a finding that at the time of the transaction, in March, 1924, the maximum value of the land was $9,600, and that the sum then due on the first mortgage and to plaintiffs exceeded this more than $1,800. In the *twelfth* there is a finding, "That there was no personal liability against the defendant U. H. Rosebaugh upon said note of $4,557.55, and said note was given as a matter of convenience and as a method of carrying the real estate in the guise of commercial paper. That said notes were given as part of said transaction, and as a part of said agreement to reconvey said real estate, and said agreement (above set out) was a mere option to the defendant U. H. Rosebaugh to repurchase said real estate upon his performing the conditions set forth therein, . . . and upon the failure of the defendant U. H. Rosebaugh to exercise said option, said agreement

became null and void by virtue of its terms, and that said note which was given as a part of said agreement likewise became null and void." The *thirteenth* recites that a good consideration passed from plaintiffs to Maurice B. Rosebaugh. The *fourteenth,* that this being an equitable action defendants should be given a reasonable time to exercise their option to repurchase on payment to the plaintiffs of the note of $4,557.55 with interest at eight per cent since March 1, 1924, the payments which plaintiffs have since made on the first mortgage, and for insurance, with interest at six per cent since the date of the payments, the costs of this action, and any sums paid by plaintiffs on the first mortgage since the trial; and they were given until February 29, 1928, to make such payments.

The conclusions of law were: *First,* that the deed and contract of March 1, 1924, was a sale with right to repurchase, and not a mortgage, and the deed in question is absolute. *Second,* that Benson was acting for the bank. *Third,* that as defendants failed to exercise their option to repurchase by paying the sums mentioned in the fourteenth finding by February 29, 1928, possession of the premises should be surrendered to plaintiffs, and if necessary a writ of restitution should be issued to put them in possession.

The referee's report was filed January 10, 1928, and was approved by the court on March 1, and judgment was rendered in accordance with it.

The matters stated in the *twelfth* finding of fact with respect to the effect of the instruments executed in connection with the deal between the parties about March 1, 1924, are more properly conclusions of law as distinct from findings of fact, and are tantamount to the first conclusion of law. Appellants contend that this conclusion of law is not supported by the findings of fact previously made. This contention must be sustained. It seems clear, both from the pleadings and the findings of fact one to eleven inclusive that at the time of the transaction between the parties, about March 1, 1924, there was an actual indebtedness to plaintiffs. The parties recognized it as such. Notes were given for it, one of which was later paid, and even in this case plaintiffs sought judgment on the other one. The instrument executed by Benson, dated March 1, 1924, and hereinbefore set out, refers to this as an indebtedness evidenced by notes, and provides for a reconveyance on the payment. It is the substantial equivalent of the usual provision in a real-

estate mortgage which, after reciting a conveyance of the property by the mortgagor to the mortgagee, provides that on the payment of certain sums the conveyance shall be of no effect, the only difference being that here there is an agreement to reconvey on the payment of the debt. The ordinary test in determining whether or not instruments of this character constitute a mortgage, or a conveyance, is the existence of a debt (*Hoyt v. National Bank,* 115 Kan. 167, 222 Pac. 127; *Lincoln State Bank v. Breazier,* 122 Kan. 423, 251 Pac. 1080), and the universal rule is that if a debt exists there is in effect a mortgage, and especially is that true if the debt exists in an enforceable form, evidenced by notes or otherwise, which would form the basis of an action. (*Live Stock Co. v. Trading Co.,* 87 Kan. 221, 123 Pac. 733; *Gilmore v. Hoskinson,* 98 Kan. 86, 157 Pac. 426; *Root v. Wear,* 98 Kan. 234, 157 Pac. 1181; *Hegwood v. Leeper,* 100 Kan. 379, 164 Pac. 173; *Myers v. Mills,* 109 Kan. 734, 201 Pac. 856; *Lanborn v. State Bank,* 115 Kan. 415, 223 Pac. 293; *Williams v. Schrock,* 118 Kan. 347, 235 Pac. 111; *Rusco v. DeGood,* 127 Kan. 708, 275 Pac. 201.)

Here the parties not only referred to the matter as a debt, but notes to evidence the debt were executed, hence the debt was evidenced by instruments which could, and did in fact, form the basis of an action. The result is that the judgment of the court below must be reversed.

It is said in the brief of appellees that perhaps the referee and the court were influenced largely by the fact that at the time of the transaction between the parties, March 1, 1924, the sum owed by defendants on the first mortgage and to plaintiffs exceeded the value of the land. This fact is not controlling and should have but little weight. The fact that one takes a mortgage on land for its full value, or more, does not convert that mortgage into a deed of conveyance.

Since the facts as found in this matter are not questioned and are no longer open to dispute, there is no occasion for a new trial. The judgment of the court below is reversed with directions that it be set aside, that a decree of foreclosure be entered for the sale of the property for the sum due plaintiffs, as shown by the findings, with the period of redemption as provided by law.