No. 32,193

THE JETT & WOOD MERCANTILE COMPANY et al., *Appellants*, v. H. W. KOENEKE, Bank Commissioner, CHARLES W. JOHNSON, General Receiver of the Citizens State Bank of Belle Plaine, et al., *Appellees.*

(44 P. 2d 199)

Opinion filed May 4, 1935.

*E. L. Foulke, Roy H. Wasson* and *C. E. Robb,* all of Wichita, for the appellants.

*E. J. Taggart* and *John Bradley,* both of Wellington, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to have a certain deed executed by third parties declared to be a mortgage, to recover possession of the described real estate and damages for the detention thereof.

On October 25, 1928, one E. R. Hymer and wife had delivered to the Citizens State Bank of Belle Plaine their note for $2,000, secured by a mortgage on the real estate in controversy. Mrs. Hymer passed away before her husband, who died in April, 1931, at which time the taxes on the real estate were in arrears for the year 1929 and thereafter. Interest on the note had been paid to March 9, 1931. So far as the record shows, there were no probate proceedings on the estates of either Mr. or Mrs. Hymer, who left surviving them as heirs at law a son and two daughters. Mr. Hymer was indebted to the plaintiffs, and on June 20, 1931, the heirs gave to the plaintiffs a written document stating they were desirous of saving expenses of administration of their father's estate, and promising to pay the debts due each of the two plaintiffs in an amount equal to the value of the estate and pledging "all property of said estate and their *pro rata* share thereof to the payment of said debts." No property was specifically described. The document was not acknowledged before a notary and was never made a matter of record. On August 3, 1931, the mortgagee bank became insolvent and a receiver took

charge. On August 24, 1931, the Hymer heirs deeded the property to the bank by a warranty deed, covenanting the property free and clear except the bank's mortgage. On October 19, 1931, plaintiffs notified the bank they had the written document of June 20, 1931, and about that time they communicated with the bank, which was then in possession of the real estate. On December 16, 1931, the plaintiffs received from the Hymer heirs a quitclaim deed for the real estate. It is undisputed that plaintiffs had knowledge of the bank's deed when they received their quitclaim deed. The bank's deed was recorded December 26, 1931, and plaintiff's deed was recorded November 15, 1932. The action was filed July 23, 1933. The trial resulted in a judgment that the deed of August 24, 1931, was a deed and not a mortgage, and that the bank was the owner of the real estate and entitled to the rents collected by it, and that the plaintiffs had no interest in the real estate or rents. Title was quieted in the bank. Plaintiffs appeal. Although a number of specifications of error are made, they are presented under two general heads, summarized thus: Did the evidence and pleadings compel a holding that the deed to the bank was a mortgage, and did they compel a holding that plaintiffs were entitled to recover rents collected?

Plaintiffs were not entitled to collect rents unless the bank's deed was a mortgage and they were entitled to possession under their quitclaim deed, and we therefore consider only whether the trial court ruled correctly that the bank's deed was a deed and not a mortgage. The trial court having found in favor of the bank, where there is any dispute in the facts or where implication therefrom may be resolved either in favor of plaintiffs or the bank, the dispute or implication must be resolved in favor of the bank. So considered, the evidence shows that at the time the deed to the bank was made the Hymer heirs were not indebted to the bank; that the mortgage note was past due as to principal and that interest was in arrears for almost six months; that the taxes were in arrears from 1929 on, and that the makers of the note were dead; the son, Doctor Hymer, testified that about a week before the deed was made an officer of the bank asked for a deed, as the bank had all (money) it wanted to put in the property; that the taxes would have to be paid; that the bank wanted its money; that it would not advance tax money unless it had a deed; that witness told the bank's agent he thought the property worth $3,500, and witness told him he would be willing to give

the deed "if we could have the privilege of selling the place and having the difference to apply on other debts"; that later the deed was executed and delivered; that the bank paid nothing for the deed and did not return the father's note and mortgage, nothing being said that that was to be done; that he and his sisters had done nothing toward selling the place; that he and his sisters were not indebted to the bank. On cross-examination he testified as follows:

"Q. I believe you stated in answer to a question of Mr. Wasson's that you gave the deed to Mr. Scudder which named you and your two sisters as the grantors and the Citizens State Bank as grantee, with an oral agreement that you retained as grantors the privilege of selling the property and applying the difference between the bank's mortgage and the taxes on the debts of others. A. Yes, sir.

"Q. That's the title you retained when you gave the Citizens State Bank their deed, isn't it? A. Yes, sir.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. At the time you executed this deed on August 24, 1931, were you indebted to the Citizens State Bank of Belle Plaine? A. Myself, you mean.

"Q. Yes. A. No.

"Q. Do you know whether either of your sisters were indebted to the bank at that time? A. Not that I know of.

"Q. At the time you made the conveyance to the plaintiffs here, which has been marked as plaintiffs' exhibit B, did you make any reference or did you tell the plaintiffs that you had previously executed this instrument, marked defendants' exhibit 1? A. Yes."

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"A. It wasn't my understanding the bank gave him (witness' father, E. R. Hymer) money for taxes before his death.

"Q. Then, it was your understanding that the bank intended to pay the taxes after his death, on some real estate? A. Yes.

"Q. And you gave them this deed to secure whatever tax money they paid out? A. Yes, and in addition to the two thousand dollars.

"Q. Whatever tax money is paid, do you owe the bank any money for taxes? A. No, sir.

"Q. Had your father made a note to the bank for tax money? A. Not to my knowledge.

"Q. You knew the bank already held a mortgage on the premises, signed by your father and mother, when you made the deed, didn't you? A. Yes, sir.

"Q. Did you owe any part of that indebtedness that was evidenced by that securing of the mortgage? A. No, sir.

"Q. You never claimed to pay any part of it to the bank, did you? A. No.

"Q. Do you know whether or not your sisters claimed they owed any part of it to the bank? A. I don't think so."

From the above it appears that the heirs did not agree to pay

the debt secured by the note and mortgage made by their parents, and neither did they consider themselves obligated to pay to the bank any moneys it advanced to pay taxes. Under the heirs' version of the matter, they owed no debt to the bank. In *Hoyt v. National Bank,* 115 Kan. 167, 222 Pac. 127, it was said:

"The true test in determining whether or not the transaction between the parties constituted an absolute conveyance or a mortgage is whether, after the transaction, there existed, by virtue thereof, the relation of debtor and creditor. It is well settled that an instrument in form of a deed or an absolute conveyance may, under certain circumstances, be shown to have been given only as security for the payment of a debt or the performance of some act, in which case the instrument is in reality a mortgage." (p. 172.)

And in *Lincoln State Bank v. Breazier,* 122 Kan. 423, 251 Pac. 1080, it was said:

"The test, repeatedly applied by this court, as to whether an instrument in the form of a deed is a conveyance or is intended as a security for a debt, hence to be treated as a mortgage, is to be determined by whether there continues to be any debt for the instrument to secure." (p. 427.)

In both of the above cases *Fabrique v. Mining Co.,* 69 Kan. 733, 77 Pac. 584, is cited. In that case Scheetz undertook to erect a building. He became involved and gave one of his creditors a mortgage which was assigned to the defendant. He later conveyed the property to defendant and took back an agreement to repurchase, the performance on his part being optional. He later conveyed to plaintiff, who sought to have the deed to defendant declared a mortgage. In disposing of his contention this court said:

"The test in determining whether an absolute conveyance with a separate agreement to reconvey, executed simultaneously, constitutes a mortgage is whether the relation of debtor and creditor continues to exist. . . Applying this test to the present transaction, it cannot be construed into a mortgage. Scheetz was not liable to the coal company for any of the debts assumed and paid by it. He did not agree to pay such debts nor did he agree to pay any of the expense of completing the building. An action could not have been maintained by the coal company against Scheetz to recover any of such amounts," etc. (p. 737.)

The rule declared in the above decisions has been approved in subsequent cases. (*Benson v. Rosebaugh,* 128 Kan. 357, 278 Pac. 41; *Hall v. Goldsworthy,* 136 Kan. 247, 14 P. 2d 659; *Lindberg v. Pence View Farming Co.,* 140 Kan. 138, 33 P. 2d 1102.) And see *Handrub v. Griffin,* 127 Kan. 732, 275 Pac. 196, where it was held there was an existing debt.

Applying the rule to the evidence mentioned above, it is held the trial court committed no error in holding that the warranty deed from the Hymer heirs to the bank was not a mortgage.

During the course of the trial there was some contention with reference to a claimed merger of title. In their opening statements plaintiffs made some assertions that led defendants to conclude plaintiffs claimed there was a merger of the bank's title under the mortgage of 1928 and as owner under the warranty deed which plaintiffs claim is a mortgage. Some reference is made to the doctrine in appellants' argument on the question of the deed being a mortgage. Very possibly this grows out of the fact the bank in its answer alleged there was no merger. It is not made to appear that whether or not there was a merger affected the final result. It was held in *Stacey v. Tucker*, 123 Kan. 137, 254 Pac. 339, where authorities in support are cited, that—

"Where a mortgagee of real estate acquires the legal title to the mortgaged property, the mortgage will become merged in the larger estate or not, as the mortgagee may desire or his interest require." (Syl. ¶ 2.)

The bank may have been apprehensive that a claim might be made that its deed was a mortgage and it would be advantageous that its mortgage of 1928 be kept separate and apart from the title it received under the warranty deed. As against the grantee of a quitclaim deed, who took with knowledge of the previously executed warranty deed, it does not seem to have been an unreasonable position to take. But in view of the trial court's conclusion, whether or not there was merger does not affect the result. It may be remarked that it is undisputed the bank was in possession of the real estate, at least from the date of its warranty deed, and even though that deed were declared a mortgage, plaintiffs would not have been entitled to possession until plaintiffs had satisfied the claims of the mortgagee in possession. It may be further remarked that plaintiffs did not pursue their remedies in the probate court against the estate of the elder Hymer. Had they done so the deed of the heirs to the bank would not have availed to defeat their right to have the premises sold for the payment of debts.

The judgment of the trial court is affirmed.