No. 32,404

H. H. Holuba, *Appellee,* v. Clarence H. Floersch et al., *Appellants.*

(50 P. 2d 1004)

Opinion filed November 9, 1935.

*M. A. Bender,* of Holton, and *A. Harry Crane,* of Topeka, for the appellants.

*Oscar Raines, Ralph F. Glenn, Ivah Raines Glenn, Wendell B. Garlinghouse,* all of Topeka, and *William E. Smith,* of Wamego, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This action involves the construction of a deed executed by defendants to plaintiff and a contract executed by all the parties. Plaintiff contends the deed conveyed to him the title to the real-estate property described therein, and that the contract gave defendants an option to purchase the property within a time stated, at an ascertainable price, which option had not been exercised. Defendants contend the deed and contract should be construed together as constituting an equitable mortgage. After hearing the evidence and construing the instruments the trial court found generally for plaintiff and rendered judgment quieting his title to the property. Defendants have appealed.

The facts are not seriously controverted and may be stated as follows: The real property in controversy consists of a farm and some property in the town of St. George. Title to the real property, by inheritance, was vested in Clarence H. Floersch, his mother, Theresa C. Floersch, and his brother, Gerard Floersch. The mother and brother were nonresidents of this state. Clarence and his wife lived upon and operated the farm and rented the town property,

and he appears to have had charge of business matters concerning the property. He transacted his banking business with the St. George State Bank, of which the plaintiff, H. H. Holuba, was cashier. In August, 1932, the real property in question was encumbered by a first mortgage of $11,000 to one George Ault, upon which there was accrued unpaid interest of $760. There was accrued unpaid taxes of $158, plus penalties. There was also a second mortgage on the property to the St. George State Bank in the sum of $3,500, with $495 accrued unpaid interest. Clarence H. Floersch was also indebted upon a promissory note of $519.59, with $63.56 accrued interest, to the mercantile firm William Dalton's Sons, and was also indebted upon another promissory note in the sum of $1,165, with accrued interest of $58.25, to the St. George Oil Company. These two notes last mentioned appear to have been unsecured. George Ault had brought an action in the district court to foreclose the mortgage of $11,000 with accrued interest. With matters in that situation Clarence H. Floersch had a talk with the plaintiff. They appear to have reached some agreement with respect to the properties and the above indebtedness, but details of that are not disclosed by the evidence except as they are incorporated in the instruments later executed. It appears plaintiff suggested he would draw the contract, but Clarence H. Floersch wanted his attorney to draw it, and this was agreeable to plaintiff. He went to Manhattan and employed an attorney to draw the contract, and gave to him all the data and information which the attorney had from which to draw the instrument. After it was drawn the attorney sent for all the parties and suggested to plaintiff he had better have an attorney. Plaintiff thought he could read the contract and understand it and that he did not need one. The contract was read and executed by the plaintiff in this action and his wife as parties of the first part and the defendants in this action as parties of the second part. The defendants executed to the plaintiff their general warranty deed to the real property, subject only to the first mortgage in the amount of $11,000 in favor of George Ault.

The contract recited the various items of indebtedness above mentioned and the fact that the first mortgage was being foreclosed, and that certain costs had accrued in connection therewith, and recited in substance that the first party, plaintiff in this action, now proposes to second parties that if they would execute the deed just mentioned he would agree to pay the amount of the second

mortgage to the bank, the note to William Dalton's Sons, the note to the St. George Oil Company, the taxes, with penalty, the interest on the first mortgage, and costs in the foreclosure action. It was further agreed that the second parties should have the income and the use of the property until March 1, 1933, without charge, and the first party would rent to second party the real property for the year beginning March 1, 1933, to March 1, 1934, for which the second parties agreed to pay as rent one half the crops produced on the premises and one half of the rent received from the property in town. It was further agreed that parties of the second part should have the exclusive right "to redeem" said real property from "all indebtedness so paid by parties of the first part, together with interest thereon," at six percent, "at any time they may see fit within the period of eighteen months" from the date of the contract. It was further agreed that if the second parties did so redeem such real property within the time stated the first party would make and execute to them his warranty deed for the real property, subject only to the $11,000 mortgage, and in the event they failed to so redeem said premises, then the deed should become absolute and the second parties be forever barred from any right, title or interest in the property.

After the execution of this contract the plaintiff paid, or caused to be paid, the indebtedness to the St. George State Bank, to William Dalton's Sons and to the St. George Oil Company; and the canceled notes representing such indebtedness were delivered to defendants. Plaintiff also paid the taxes on the property then due, and later taxes as they accrued. Plaintiff also paid off the first mortgage, with accrued interest, and the costs of the foreclosure action, and surrendered the notes representing that indebtedness to defendants. To enable him to do this plaintiff placed a new mortgage on the property for $11,000. The defendants Clarence H. Floersch and wife remained in possession of the property and received all the income from it until March 1, 1933, as the contract provided, and beginning on that date for the next year occupied the same as tenants of the plaintiff and paid to him the rent provided in the contract. They did not "redeem" or pay to plaintiff the moneys he had paid out, as above stated, within the eighteen months after the execution of the contract, nor did they offer to do so within that time, or later.

The oral testimony simply described matters already stated in

the contract, or concerning which there was no controversy, except on two points: (1) There was testimony on behalf of defendants to the effect that after the deed and the contract had been executed, and while they were still at the attorney's office, plaintiff stated to Clarence that he would try to help him sell the place, and that he wanted Clarence to have all there was in it above these various items of indebtedness. On behalf of plaintiff there is testimony that no such statement was made. (2) Defendant Clarence H. Floersch testified that sometime in the latter part of the year for which he was paying rent he went to plaintiff and asked for more time to get a federal loan to pay off everything. Plaintiff denied this and said defendant came to him and wanted to lease the place again for another year, and that he told defendant that the property was leased to other parties.

The trial court made a general finding for plaintiff, the effect of which is to find for plaintiff on these controverted matters. Perhaps this is not very material, for had the court found for defendants on those matters concerning which there was a conflict of testimony the finding would hardly have been sufficient alone to have sustained defendant's contentions to the effect that the understanding all the time was that plaintiff was simply advancing this money for defendants and taking the deed as security for the amount so advanced.

Appellants first contend they were entitled to a jury trial, which the court refused. This contention is based upon the form of plaintiff's petition, which was in two causes of action. In the first cause of action plaintiff alleged that he is the owner and entitled to immediate possession of the real property in controversy, describing it, and that defendants unlawfully keep him out of the possession thereof. Plaintiff then pleaded at length the execution of the deed and the contract, the circumstances under which they were executed, and his view of his rights thereunder, and alleged that by reason of these instruments he was the owner of the full legal and equitable title to the property, and that defendants claimed some interest in the property, the nature of which he did not know and for that reason could not state. The second cause of action was for damages plaintiff is alleged to have sustained by reason of the fact that defendants did not vacate the property at the time specified in the contract. The prayer was that defendants be required to set forth all claims they may have of title or possession to the property, that

such claims be adjudged void, that plaintiff be adjudged the owner of such property and entitled to its possession, and that defendants be barred from any right, title, or interest therein. Copies of the deed and contract were attached to the petition as exhibits.

Defendants answered by a general denial, except they admitted the execution of the deed and contract, and by a cross petition pleaded the deed and contract previously mentioned, the circumstances under which they were executed, and alleged they were intended as a mortgage and as security for a debt, and prayed that the instruments be adjudged to constitute a mortgage, and that plaintiff be required to foreclose it, as provided by law.

Plaintiff's reply to this cross petition was a general denial and a plea of estoppel.

When the case was called for trial counsel for both parties stated in open court that the only question involved was whether the deed and contract constitute an absolute conveyance with an option to repurchase, or a mortgage to secure a debt. In their brief in this court appellants advise us the case was tried in the court below upon their theory. The journal entry of judgment discloses that trial was had upon the first cause of action. No evidence was offered on the second cause of action, nor is there a specific reservation of it for trial at a future time. We may regard it, therefore, as having been abandoned by plaintiff.

Whether a party is entitled to a jury trial as a matter of right is to be determined from the pleadings. (*Gresty v. Briggs,* 127 Kan. 151, 272 Pac. 178.) In determining this question the court should disregard the form of the pleadings and look to the essential nature of the controversy between the parties as disclosed by the pleadings. That is the controlling matter. (*Boam v. Cohen,* 94 Kan. 42, 145 Pac. 559; *Akins v. Holmes,* 89 Kan. 812, 816, 133 Pac. 849.) Here it is clear from the pleadings that the real controversy between the parties—in fact the only controversy—is whether the deed, in view of the contract, should be construed to be a mortgage. Defendants' answer made that the sole controversy, and the case was tried on defendants' theory. Such a controversy is equitable in its nature, and neither party is entitled to a jury as a matter of right. (*Hockett v. Earl,* 89 Kan. 733, 133 Pac. 852; *Lindberg v. Pence View Farming Co.,* 140 Kan. 138, 140, 33 P. 2d 1102.) More than that, had a jury been called in this case the court would have been compelled to interpret the contract and to tell the jury, as a matter of law,

whether, in view of it, the deed constituted a mortgage. Since there was no material controverted parol testimony the jury would have had no function to perform except to follow the instructions of the court. In such a circumstance it is not error for the court to refuse a jury trial. (*Lincoln State Bank v. Breazier,* 122 Kan. 423, 251 Pac. 1080.) The fact that plaintiff's petition might have been drawn in a different form and so that this question would not have been presented becomes immaterial, since it is clear from the pleadings as a whole that the only controversy between the parties concerned the construction of the contract. The essential nature of the controverted issue being whether the deed should be construed as a mortgage, and this being a matter clearly for a court of equity, the fact that the petition contained averments proper in an ejectment action does not require a trial by jury. (*Houston v. Goemann,* 99 Kan. 438, 162 Pac. 271; *Rayl v. Brown,* 108 Kan. 385, 195 Pac. 611; *Winkler v. Korzuszkiewicz* [Shusky], 112 Kan. 283, 211 Pac. 124.)

Turning now to the essential controversy between the parties and the principal point argued here, namely: Did the trial court err in holding the deed from defendants to plaintiff to be a conveyance of title to the real property and not a mortgage to secure a debt? It is elemental that a mortgage to secure a debt can have no substantial existence unless there is a debt to be secured by it. This not only accords with the common understanding, but is in harmony with the authorities. (*Lincoln State Bank v. Breazier,* supra; *State Reserve Bank v. Groves,* 125 Kan. 661, 266 Pac. 42; *Benson v. Rosebaugh,* 128 Kan. 357, 364, 278 Pac. 41; *Lindberg v. Pence View Farming Co.,* supra; *Jett & Wood Merc. Co. v. Koeneke,* 141 Kan. 791, 44 P. 2d 199.) If by the record in this case any debt is shown to exist from defendants, or any of them, to the plaintiff, or to anyone else, it must be found in the written contract between the parties, the substance of which has been stated. Examining the contract, we are unable to see that any such debt exists. The record does not show that defendants were indebted to plaintiff in any sum. They were indebted to Ault, the St. George State Bank, Wm. Dalton's Sons, the St. George Oil Company, and for taxes and court costs. All these debts have been paid, and the notes evidencing such debts have been canceled and surrendered to defendants, hence, none of those debts continue to exist. By what was done was any

debt created from defendants to plaintiff? The contract contains no statement of such a debt. Defendants did not promise to pay plaintiff any sum at any time. Plaintiff could not have maintained an action for debt due or owing to him from defendants against defendants, or any of them, upon any of the covenants of the contract. We are compelled to hold the trial court correctly concluded that the contract evidenced no debts from defendants, or any of them, to the plaintiff, or to anyone else. Whether the instruments, notwithstanding, were understood and intended by the parties to create, acknowledge, or evidence a debt may sometimes be shown by parol evidence. (See annotation 79 A. L. R. 937-958.) Here there is no evidence of that character on which to rely. We are left to the construction of the written instruments.

Appellants point out some language in the contract which perhaps was inaptly used. The words "redeem" and "right to redeem" obviously were used in the sense of repurchase and right to repurchase. The expression to the effect that if defendants failed to redeem or repurchase within the time stated "then the deed shall become absolute" was a phrase emphasizing determination of defendants' right to repurchase and to have the property reconveyed to them, and should not be construed—as appellants would have it—that the deed itself was intended to convey no title until the end of the eighteen months' period. The language in the contract with respect to the indebtedness paid by the first party (plaintiff in this action), with interest at six percent, fixed a basis for computing the amount defendants were permitted to pay, and which if paid by them would entitle them to a reconveyance of the property to them. It does not indicate an indebtedness from defendants to plaintiff, as appellants would have it interpreted. The contract simply gave defendants the exclusive option to repurchase the property at any time within eighteen months, at an ascertainable price, depending upon when the option would be exercised. It did not bind defendants to repurchase. They never exercised the option. More than that, defendants occupied the property for a year as tenants of plaintiff and paid rent as any other tenant would do. This is a recognition of title in plaintiff and is inconsistent with a claim of title in themselves.

We find no error in the record. The judgment of the court below is affirmed.