No. 36,975

KARL HESS and EVA HESS, his wife, *Appellees,* v. HENRY G. HESS, *Appellant.*

(187 P. 2d 383)

Opinion filed December 6, 1947.

*Chas. A. Springer,* of Lawrence, argued the cause and was on the briefs for the appellant.

*Charles D. Stough,* of Lawrence, argued the cause, and *George K. Melvin,* of Lawrence, was with him on the briefs for the appellees.

The opinion of the court was delivered by

HOCH, J.: Appellant contends that the trial court erred in construing as a mortgage a certain instrument which was in form a warranty deed. The action was to quiet title, and was between the original parties named in the instrument. The appeal is from an order overruling the defendant's demurrer to the plaintiffs' evidence.

In their petition, the plaintiffs, Karl Hess and Eva Hess, his wife, alleged that the property involved, a residence property in Douglas county, had an approximate value of $4,000; that at the time they

purchased it in 1924, there was a mortgage lien against it in the amount of $900; that in 1939 there remained due on the mortgage the sum of $650 which they could not pay; that being unable to refinance the mortgage because of their lack of earning ability and their advanced age, they entered into a verbal agreement with the defendant, their son, Henry Hess, shortly prior to April 15, 1939, under which they were to convey the property to him to enable him to refinance the balance due on the mortgage, and that in accordance with this agreement, they executed a warranty deed to the property and that this deed, although absolute in form, was intended by both parties to be a mortgage only and to give the defendant security which would enable him to negotiate a loan necessary to release the then existing mortgage, and also to be held by the defendant as security for any money due him. They alleged further that the defendant then mortgaged the property to the Douglas County Building and Loan Association for the sum of $450 and executed to that association an assignment of the rentals received from the property which amounted to $12 a month. They further averred that the defendant contributed from his own funds approximately $200 towards the payment of the mortgage; that the mortgage was paid in full in May, 1939, and that the plaintiffs again took possession of the property in 1941, and that they were occupying it as their homestead at the time the action was begun. They further alleged that soon after the return of the defendant from the military service in 1946, they tendered to him the amount due and asked for a reconveyance of the property, and that he refused to make the reconveyance, and had threatened to attempt to evict them from the property. They asserted their readiness and willingness to pay the defendant the amount due him, said to be about $200, and tendered that amount into the court. They prayed for an order directing reconveyance of the property. In his answer, the defendant asserted that at the time of execution of the deed there was a mortgage of about $900 on the property and five years' delinquent taxes, and that foreclosure was threatened; and "that the plaintiffs were unable to pay said mortgage and taxes and rather than have said property foreclosed agreed with the defendant that in consideration of their love and affection for him that they would deed said property to him, if he would pay the indebtedness against said property." He further alleged that the amount due on the mortgage and for taxes was in excess of the market value of the property, and that the

money which he received in negotiating a loan was used together with $200 of his own money to pay the mortgage and the delinquent taxes.

On these pleadings the action went to trial on November 26, 1946. At the conclusion of plaintiffs evidence the defendant filed a demurrer which was taken under advisement, and the defendant thereupon introduced his evidence. On December 21, 1946, the trial court overruled the demurrer and found that the parties had entered into a verbal agreement as alleged by the plaintiffs and had executed the instrument "to enable him to refinance for them the balance due on said mortgage and taxes"; that the property was the homestead of the plaintiffs and that the deed was to be held by the defendant as a matter of convenience in the refinancing of the mortgage and payment of the delinquent taxes and to give the defendant security upon which he could negotiate the loan to release the mortgage then due. The court further found that the defendant had contributed from his own funds towards the payment of the mortgage, which was paid in full and released in May, 1939. The court then found that title in fee simple never passed to the defendant. Judgment was entered canceling the warranty deed and decreeing the property to be the property of the plaintiffs "subject, however, to a first and prior lien in favor of the defendant, Henry G. Hess, for an amount to be determined hereafter by the court." Jurisdiction was expressly retained for the purpose of determining the amount of defendant's lien in case the parties failed to agree upon the amount. Defendant's motion for a new trial was overruled and this appeal followed.

Appellant's principal contention is that there was no evidence that any debt was created as between the parties, and more particularly that no definite amount and no definite time of payment were fixed or agreed upon. He asserts that appellees never said anything about repayment until after he returned from the military service which was more than seven years after the deed was given.

The rule has been repeatedly stated in our decisions that in determining whether an instrument, in form a deed, is a conveyance or is to be treated as a mortgage as between the parties, the ordinary test is whether by virtue of the circumstances and the intent when the instrument was executed, there continues to be any debt for the instrument to secure. (*Jett & Wood Merc. Co. v. Koeneke,* 141 Kan. 791, 44 P. 2d ·199, and cases cited; *Holuba v. Floersch,* 142

Kan. 601, 50 P. 2d 1004.) We find no cases to support appellant's contention that an instrument in form a deed may not be construed as a mortgage unless the continuing debt is definite in amount, with a fixed date of maturity. The rule as laid down seems only to require that there be a continuing debt, determinable in amount, for the enforcement of which an action would lie. In the instant case, the defendant could have asserted a claim covering his expenditures, secured an accounting in the absence of agreement as to the amount due him, and have the determined amount declared a lien upon the property. That is precisely the result of the court's action in the instant case.

We proceed to the question of whether there was evidence to support the finding of the trial court that a debtor and creditor relationship was created and that the instrument was intended as security and not as a conveyance of title. While there was conflicting evidence, we think there was sufficient evidence to support the trial court's finding.

Eva Hess, one of the plaintiffs, testified that she and her husband applied to a Mr. Hinshaw for a loan; that their son came to them to sign the deed for security; that they signed it "in Mr. Emick's office"; that she didn't realize it was a deed until defendant claimed to be the owner; that Mr. Hinshaw told her it was a security deed for the money her son might put in the place; that her son Ralph also offered to help get a loan; that she never asked her son Henry to help her but it was his own idea; that the amount due on the mortgage had been paid out of the rents; that the property was rented for 34 months and that they moved into it in December, 1944, and thereafter improved the property to the extent of about five or six hundred dollars; that her son Henry went into the service in 1942 and was discharged in 1945; that he was single and had no other dependents and that he lived with them until two years after he was married when he bought another place; that they had no income and could not get a loan; that she went to Mr. Emick's office; that Mr. Hinshaw was there; that she was taken there by her son Henry who told her to come and sign the deed for security so he could get the money to pay the mortgage; she testified further:

"Q. What did Henry say to you about the property coming back to you? A. Whenever I could, whenever I got able to pay for it, I could pay him back. The house was supposed to pay it off."

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. You say if you weren't able to pay it off, what would happen to the

property? Where would the title be? A. In case there was something to happen to me and Mr. Hess until we got it paid off, why then it would be sold so he could get his money, so the other children couldn't come in and take his money. See?"

Ralph Hess, brother of the defendant, testified that he told Henry that he would raise half the money to pay off the mortgage if the defendant would get the other half and that he made arrangements to borrow half the amount needed but that the defendant told him it wouldn't be needed "with the deal him and Hinshaw had." Hinshaw, who was engaged in the real estate and loan business, testified:

"Q. Do you recall what you told Mr. and Mrs. Hess when they came to you to get this property refinanced? A. As I remember the complete transactions that were involved—I have forgotten who the mortgagee was at that time, but they wanted to refinance the mortgage. In order to get proper qualifications to make the loan,—one of the main factors for the loan on the property is, does one have the capacity to repay. Mr. and Mrs. Hess relied on their son Henry, whom I knew quite well. He asked for the loan and the Douglas County Building and Loan at that time, in order for him to qualify, he had to have the title in his name. I told that to Mr. and Mrs. Hess and at that time they conveyed title to Henry Hess. Now as to the particulars as to the rest of it, I don't know."

He further testified that the parties came into his office and that he knew that Karl and Eva Hess had to convey title in order for Henry to get the loan.

There was much other testimony concerning incidental matters which need not be related here. We find no grounds for upsetting the finding, under all the circumstances disclosed by the testimony, that the instrument was intended as security for a debt created covering expenditures made by defendant. The court properly retained jurisdiction of the case for the purpose of determining the amount of the debt which should constitute a lien against the property in favor of the defendant. It is a well settled rule that where a court of equity has obtained jurisdiction of a controversy, it will ordinarily retain jurisdiction for the purpose of determining all issues with respect to the subject matter. (*Snyder v. Lassen*, 156 Kan. 230, 236, 132 P. 2d 624.) This rule has been specifically applied to actions to determine whether instruments purporting to be deeds are in fact mortgages (*Holmes v. Holt*, 90 Kan. 774, 136 Pac. 246; *Faust v. Carson*, 158 Kan. 479, 148 P. 2d 504).

The judgment is affirmed.