No. 28,969.

H. M. Langworthy, Receiver of the Kansas City Joint Stock Land Bank of Kansas City, Missouri, *Appellee*, v. James T. Martin et al., *Defendants;* A. F. Wilson, *Appellant.*

No. 28,970.

H. M. Langworthy, Receiver for the Kansas City Joint Stock Land Bank of Kansas City, Missouri, *Appellee*, v. Chester A. Ellis et al., *Defendants;* A. F. Wilson, *Appellant.*

No. 28,971.

H. M. Langworthy, Receiver for the Kansas City Joint Stock Land Bank of Kansas City, Missouri, *Appellee*, v. Franze S. Stainbrook et al., *Defendants;* A. F. Wilson, *Appellant.*

(281 Pac. 879.)

Opinion filed November 9, 1929.

*Donald Stanley,* of Mankato, and *Harry E. Snyder,* of Council Grove, for the appellant.

*John A. Hall,* of Pleasanton, and *John F. Reinhardt,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

Dawson, J.: These appeals were separate actions in foreclosure of mortgages on Linn county farms. The question of present concern is whether the trial court erred in limiting the redemption period to six months.

The controlling facts were these: One George Kuhns determined to acquire a number of Linn county farms on a minimum outlay of cash. Accordingly he entered into contracts with the owners of three farms, one of whom was James T. Martin. The deal he made with Martin will illustrate his method in the three cases. Kuhns agreed to buy the Martin farm for $10,500 and to pay $3,000 of that sum in cash. Martin agreed to borrow $7,500 from the Liberty Joint Stock Land Bank of Salina and to give a mortgage on the farm therefor, and to retain the amount thus borrowed, thereby obtaining the entire agreed price of his farm, and Kuhns agreed to accept a deed to the farm with the usual covenants of warranty "except a mortgage to the Liberty Joint Stock Land Bank for $7,500, which the grantee assumes and agrees to pay." This arrangement was carried out in detail. Later the appellant, A. F. Wilson, derived title from Kuhns. The $7,500 note and mortgage came into the possession of plaintiff, and default thereon brought foreclosure. The trial court held that the $7,500 mortgage was essentially a purchase-money lien, and as less than one-third of the agreed purchase price of the farm had been paid by the purchaser or by anybody claiming under him, the period of redemption should be six months from the date of the foreclosure sale. From a judgment to that effect this appeal is prosecuted.

The pertinent statute, in part, reads:

"Whenever a lien shall be given for the purchase price of any real estate, and default shall be made in the conditions of the mortgage or instrument giving such lien before one-third of the purchase price of such real estate shall have been paid by the purchaser thereof, such purchase-money lien may be foreclosed by the legal holder thereof in the manner now provided by law for the foreclosure of other mortgages, and such real estate may be sold under a judgment of foreclosure, as now provided by law: *Provided,* That whenever any such real estate shall be so sold, and the same shall not be redeemed from the judgment by the payment of all principal and interest due upon such lien and costs of such foreclosure, within six months from the date of such sale, such sale shall become absolute, . . ." (R. S. 60-3466.)

Appellant contends that the $7,500 mortgage which is foreclosed

in the instant case (No. 28,969) cannot be regarded as a purchase-price mortgage because it was not given by Kuhns, the purchaser. He further argues that the fact that the mortgage was executed by Martin as owner and vender of the farm before he conveyed it to Kuhns is conclusive that it could not possibly be a purchase-money mortgage. In advancing this contention appellant altogether ignores the contract of purchase and sale between Martin and Kuhns and the arrangement between them whereby the money to pay for the farm was procured, and also ignores the fact that neither Kuhns nor appellant nor anybody else has yet paid as much as one-third of the purchase price—except the mortgagee who is succeeded in interest by this plaintiff. A critical examination of the statute quoted above does not warrant the construction insisted on by appellant that to limit the redemption period to six months it is essential that the purchase-money mortgage lien should have been executed by the purchaser. The chief concern of the statute regarding the redemption period is in respect to the amount of the financial stake the judgment debtor has in the property which is extinguished by the foreclosure sale. Have he and those claiming under him actually been out of pocket as much as one-third of the purchase price? If so, they are to have eighteen months to redeem. If their entire stake in the property is less than one-third of the purchase price, then a leniency of six months for redemption after foreclosure sale is all they should have. (*Woods v. Wolf,* 116 Kan. 56, 225 Pac. 1081; *Chastain v. Walton,* 120 Kan. 157, 242 Pac. 479.) While it is true that in the familiar run of analogous cases the mortgages were executed by the purchaser to some third party from whom the purchase money had been borrowed, the reason for the six months' redemption period in such cases is precisely the same where the form of the borrowing transaction alone has been varied but not its substance. In either case the mortgagee is the party who furnishes the purchase money. It must be borne in mind that the giving of the mortgage by Martin rather than by Kuhns was merely part of the agreed arrangement of the parties for raising the entire purchase price for Martin's farm. Apart from this transaction Martin had no purpose of his own to serve in borrowing money and mortgaging his farm. And so it was quite proper for the trial court to consider the substance rather than the form of the transaction whereby the $7,500 mortgage was placed on the Martin farm.

It is also contended that the fact that the loan was for so large

a sum on the security offered tends to prove that this lien could not be regarded as a purchase-money mortgage; that the authority of the Liberty Joint Stock Land Bank was so limited by statute that it could not lawfully loan $7,500 on a $10,500 farm. As a point of fact this argument is not strong; as a point of law it is quite unavailing. As the party for whose convenience the $7,500 mortgage loan was procured from the bank by Martin, Kuhns would be in no position to raise this legal point; and of course it is no stronger when raised by appellant, who claims under Kuhns. (*The Farmers National Bank of Arkansas City v. George W. Robinson, Receiver, etc., et al.,* 59 Kan. 777, 176 U. S. 680, 44 L. Ed. 637, reported in full in 53 Pac. 762. See, also, note in L. R. A. 1917B, 839-845, 856-858.)

The companion cases 28,970 and 28,971 are governed by what has been said above and require no separate discussion.

The judgments are affirmed.

HARVEY, J. (concurring specially): I concur in the conclusion reached, but prefer to state my reasons as follows: In these cases we are not dealing with a purchase-money mortgage as that term is defined in R. S. 67-305 and as it is usually used in the books. (41 C. J. 528; 19 R. C. L. 416.) Under the definitions there given the mortgage should be made by the purchaser of the property. But our redemption statute, which controls the cases before us and which is set out in the opinion (R. S. 60-3466) applies to a mortgage "given for the purchase price of any real estate." It is not limited to a mortgage "given by the purchaser," as is R. S. 67-305. Therefore, in determining the period of redemption under our redemption statute it is not material whether the mortgage was in fact executed by the vendor or by the purchaser. The only statutory requirement is that it be a mortgage "given for the purchase price" of the real property. The evidence here clearly brings the cases within this statute.