No. 33,987

Home Owners' Loan Corporation, *Appellant*, v. John Humphrey et al., *Appellees.*

(85 P. 2d 7)

Opinion filed December 10, 1938.

*George S. Allen,* of Topeka, and *James B. Nash,* of Wichita, for the appellant.

*Glenn Porter, Getto McDonald, Dwight S. Wallace* and *William Tinker,* all of Wichita, for appellee T. M. Deal Lumber Company.

The opinion of the court was delivered by

Thiele, J.: This was an action to foreclose a mortgage on real estate, and from certain adverse rulings, hereafter mentioned, the plaintiff appeals.

At the trial there was little, if any, dispute as to the facts. It appears the defendant, John Humphrey, inherited the real estate from his mother, but he and his wife never occupied it as a homestead. On July 27, 1927, Humphrey and his wife mortgaged the real estate to the Farmers and Bankers Life Insurance Company of Wichita, hereafter referred to as the insurance company, to secure an indebtedness of $2,000. On October 30, 1929, Humphrey and his wife conveyed the real estate to Ema R. Redd by warranty deed, subject to mortgages of record and reserving a life estate to themselves. Con-

temporaneously they delivered a power of attorney to and executed a contract with Ema R. Redd, the purpose being to permit a refinancing of the indebtedness on the property. That was not accomplished, and on September 27, 1932, Ema Redd and her husband and Humphrey and his wife, by their attorney in fact, conveyed the real estate to James H. Stewart, by warranty deed, the expressed consideration being "a mortgage of $1,719.87 now on lots and one dollars ($1.00)," the deed reciting the premises were free and clear of encumbrances "except, a mortgage to the Farmers and Bankers Life Insurance Company now of record." Stewart was treasurer and vice-president of the insurance company. Contemporaneously with this deed, Stewart by written document leased the real estate to Ema R. Redd and her husband for a term from September 27, 1932, to December 1, 1933, the lease stating the rent had been fully paid, and acknowledging receipt. As a part of the lease, the lessees were given the right and privilege of purchasing the real estate themselves or selling it to others at any time prior to December 1, 1933, for $1,719.87, plus interest, taxes, repairs and insurance paid by lessor, etc., upon terms set forth, "this right of purchase to expire December 1, 1933." Later Humphrey made written application, dated October 30, 1933, to the plaintiff corporation for a loan on the real estate. In that application he stated the property was his home and that it was encumbered by mortgage to the insurance company for principal and interest, taxes, and insurance premiums paid in the sum of $2,184. The plaintiff approved the application, and under date of April 16, 1934, Humphrey and his wife executed to plaintiff a mortgage to secure an indebtedness of $2,375.32, which apparently covered the items mentioned in the application, plus some taxes, repairs and expenses not therein mentioned. This mortgage was filed April 25, 1934. On that date Stewart conveyed the real estate to John Humphrey by special warranty deed, the expressed consideration being "one dollar and other valuable consideration," and there being no exceptions or reservations in the deed. Stewart testified that in all his dealings he had no personal interest, but acted for the insurance company, and that on April 25, 1934, it received from the plaintiff corporation the sum of $2,224.04 in bonds and checks. Under date of April 11, 1934, Ema R. Redd and her husband quitclaimed to Humphrey. The last two deeds were recorded April 26, 1934.

No defendant except the T. M. Deal Lumber Company, hereafter

referred to as the lumber company, made any defense to the action filed May 22, 1937, to foreclose the plaintiff's mortgage. The basis of its claims to liens superior to that of plaintiff is summarized. In five separate actions, involving five pieces of real estate other than that involved in the present action, the Southwest Building and Loan Association, as plaintiff, foreclosed mortgages. In each action Humphrey and his wife, Mrs. Redd and her husband and the above lumber company were defendants. Without specifying the details, it may be said the various properties were sold for amounts insufficient to satisfy judgments against Humphrey and his wife in favor of others and the lumber company. No executions were subsequently issued and three of the judgments became dormant; in June, 1937, however, and within time, each of these judgments was revived, and by appropriate pleading alleging the five judgments against Humphrey, the lumber company claimed a lien superior to that of plaintiff on the real estate presently involved.

After hearing the matter, the trial court rendered judgment for plaintiff against Humphrey for $2,736.02, for the lumber company for $2,966.18, and decreed plaintiff's mortgage to be a first lien against the mortgaged real estate, subject and inferior to the lumber company's lien, and ordered the real estate sold and the proceeds applied in the following order: To taxes, to the lumber company's judgment, to plaintiff's judgment, any balance to be paid into court to abide its further order. Notwithstanding the use of terms in the journal entry of judgment, it is apparent the lumber company was given a first lien on the mortgaged real estate and the plaintiff was given a second lien on it.

Plaintiff's motion for a new trial was denied and it appeals, its specifications of error covering the following: The trial court erred in holding the lien of the lumber company to be superior to that of plaintiff, in not holding the plaintiff's mortgage to be a purchase-money mortgage and a first lien, and, if it did not err in the above particulars, in not holding that plaintiff was subrogated to the rights of the insurance company under its mortgage of July 27, 1927, with matters incidental to all of the above.

We shall first consider whether plaintiff's mortgage was a purchase-money mortgage. Although the facts are detailed above, it may be noted that Humphrey had mortgaged the real estate to the insurance company, then he conveyed it to Ema R. Redd, reserving a life estate; then he and Mrs. Redd conveyed it to Stewart,

undisputedly representing the insurance company, for the expressed consideration of "a mortgage of $1,719.87 now on lots and one dollars ($1)," covenanting the only encumbrance to be "a mortgage to the Farmers and Bankers Life Insurance Company now of record." It seems beyond cavil that Humphrey and Mrs. Redd conveyed the property in satisfaction of the mortgage debt to the insurance company, unless by reason of the contemporaneously executed lease by Stewart to Mrs. Redd and her husband. Humphrey was not a party to the lease and had no record or other title from the date of his deed to Stewart until April 25, 1934, when he again got title by quitclaim deed from Mrs. Redd and her husband and by special warranty deed from Stewart. Although appellee argues the lease kept the debt alive, it is to be noted that the lease was to Mrs. Redd and her husband, neither of whom was indebted to the insurance company or to Stewart by reason of being makers of the note secured by the mortgage or by reason of their assuming or agreeing to pay the debt. On the contrary, the lease recognized a relation of landlord and tenant, and under it the Redds, not Humphrey, were given an option to purchase the real estate themselves or to sell it to others. Under that arrangement, and after the option date had passed, Mrs. Redd and her husband conveyed to Humphrey. Without now discussing its moral or legal aspect, Humphrey represented to the plaintiff that the real estate was his home and that he owned it subject to mortgage indebtedness, taxes, etc., and thereby procured the money that enabled him to get a deed from Stewart. While there is some testimony the purpose of the lease was to allow a period of redemption, there is an utter lack of any showing, insofar as either Humphrey or the Redds were concerned, any debt remained; there is no explanation, indeed no attempt was made to show the consideration in the deed from Humphrey and the Redds to Stewart was not the true and actual consideration, or that the previously existing debt was not paid by that conveyance. Until the contrary was made to appear, the legal effect of the instruments was what the face of them showed. (*Hoyt v. National Bank*, 115 Kan. 167, 222 Pac. 127.) Unless there was a debt remaining, the deed and the lease with option to purchase, taken singly or together, did not constitute a mortgage. (See *Hoyt v. National Bank*, supra; *Jett & Wood Merc. Co. v. Koeneke*, 141 Kan. 791, 44 P. 2d 199; *Holuba v. Floersch*, 142 Kan. 601, 50 P. 2d 1004; *Humphrey v. Spencer*, 143 Kan. 912, 57 P. 2d 15, and cases cited therein.) The lumber

company contends, however, (a) that the plaintiff had no legal authority to make a loan for the purchase price and to take a mortgage therefor, and (b) that a purchase-money mortgage was never intended. In support of the first contention, it directs our attention to 12 U. S. C. A., section 1463 (1), referring to refunding present mortgage indebtedness. Subsection (g) of section 1463, however, authorizes the plaintiff corporation to "exchange bonds and to advance cash to . . . recover homes lost . . . by voluntary surrender to the mortgagee subsequent to January 1, 1930." The question would then turn on whether the particular real estate had ever been the home of Humphrey. The evidence shows clearly and without dispute it had not. But Humphrey represented that it had and thus was enabled to acquire title. Obviously Humphrey could not challenge plaintiff's right to make the mortgage. May the lumber company do so? It claims it may; that it occupied the position of a judgment lien creditor against the property in question, is interested in the subject matter of the action and has a right to question any transaction concerning it. It cites no authorities in support of its contention. We think the appellee may not question whether the making of the loan was an *ultra vires* act on the part of the appellant corporation. If the plaintiff corporation did not have power to make this particular loan it was the concern of the United States government and not of appellee (*Harris v. Gas Co.*, 76 Kan. 750, 92 Pac. 1123).

The lumber company directs our attention to 1 Jones on Mortgages, 8th ed., § 583, p. 793, to the effect that a purchase-money mortgage is one made by a purchaser to his vendor and not one by a purchaser to some third person to obtain the money paid the vendor; and to 41 C. J., § 472, p. 531, to the effect that there must have been an express purpose and intention the moneys be used in paying the purchase price. It has been settled in this state that where a third person furnishes the purchase money and takes a mortgage to secure the same the mortgage is a purchase-money mortgage. (See *Langworthy v. Martin*, 129 Kan. 159, 281 Pac. 879; *Home Owners' Loan Corp. v. Torrey*, 146 Kan. 332, 69 P. 2d 1096; *Home Owners' Loan Corp. v. Sanford*, 147 Kan. 597, 77 P. 2d 937; G. S. 1935, 60-3466.) The lumber company's contention there was no evidence the moneys advanced on the mortgage were for the purpose of purchasing the property is predicated largely on the proposition that a redemption from the insurance company's mortgage was in-

tended. It is true that Humphrey's application for the loan made such a representation. But if the legal effect of what was done was to purchase a property lost "by the owner by voluntary surrender to the mortgagee" (12 U. S. C. A., § 1463 *g*), may we ignore it and say that the intention was otherwise? We do not think so.

We conclude that the mortgage sought to be foreclosed was a purchase-money mortgage. That being the case, under G. S. 1935, 67-305, and *Noll v. Graham*, 138 Kan. 676, syl. ¶ 4, 27 P. 2d 277, the lien of that mortgage was superior to the prior judgment liens of the lumber company.

In view of what has been said, it is not necessary that we discuss the effect of revivor of the three judgments which the lumber company had against Humphrey, nor whether the doctrine of subrogation could be invoked by appellant.

The judgment of the trial court giving priority to the judgment liens of the lumber company over the mortgage lien of the appellant is reversed and the cause remanded with instructions to render judgment giving priority to the mortgage lien of the plaintiff appellant.